506 F.2d 927
 Wilburn M. BRITT, Plaintiff-Appellant-Cross Appellee,
v.
CORPORACION PERUANA DE VAPORES and Vox Steamship Company,
Defendants-Appellees-Cross Appellants, Texas
Employers' Insurance Association, Intervenor.
 No. 73-3757.
 United States Court of Appeals Fifth Circuit.
 Jan. 17, 1975, Rehearing Denied Feb. 26, 1975.
 
 David Yancey White, Corpus Christi, Tex., for plaintiff-appellant-cross appellee.
 Theodore Goller, Houston, Tex., for Vox Steamship Co.
 Charles D. Kennedy, Houston, Tex., for Corporacion Peruana.
 Owen W. Cecil, Houston, Tex., for Tex. Employers' Ins. Assn.
 Appeals from the United States District Court for the Southern District of Texas.
 Before GEWIN, AINSWORTH and GEE, Circuit Judges.
 AINSWORTH, Circuit Judge:
 
 
 1
 These are consolidated suits under the general maritime law by Wilburn Britt, a longshoreman, against Corporacion Peruana de Vapores (Peruana), the owner of the SS MARANON, to recover damages for personal injuries sustained on board that vessel on October 23, 1969, and against Vox Steamship Company (Vox), the owner of the M/V GLAFKI, to recover damages for personal injuries allegedly sustained on board that vessel on January 9, 1970. After an extended trial to the court and extensive expert and other testimony, the court determined that Britt had suffere, as a result of injuries to his back from the two accidents, damages of $40,000 for permanent disability and loss of wage earning capacity. The court also found that Britt had pain and suffering damages amounting to $20,000 which resulted from the back injuries. Of this $60,000 award, Peruana was deemed responsible for 25 per cent of the total injury, and Vox was found liable for 20 per cent of the injury. The court found that Britt's preexisting ailments and subsequent injuries not attributable to the two defendants were responsible for 55 per cent of his injuries and losses. In addition to the general award for Britt's back injuries, the court awarded Britt damages for lost pay, medical costs for a future operation, and injury to his hand resulting from the injury aboard the GLAFKI, and then subtracted from the awards medical expenses previously paid for Britt's treatment. Thus Britt received a net recovery of $22,600.69.
 
 
 2
 Britt appeals from various findings of the court which resulted in an award which he claims is inadequate by at least $300,000. Vox and Peruana do not directly attack the court's factual conclusions, but assert that imposing any liability on them is incorrect as a matter of law. After a close and deliberate review of the record, we have determined that there are no compelling reasons to conclude that the district court's findings were clearly erroneous, and thus we affirm.
 
 I. BRITT'S CONTENTIONS
 
 3
 Britt objects most to the trial court's determination that preexisting and subsequent injuries not attributable to the MARANON and GLAFKI accidents were a substantial cause of Britt's disability. Evidence was introduced showing that Britt had engaged in vigorous manual labor until the MARANON accident, that he was diagnosed as having an acute back sprain immediately after the accident, that he was able to return to light work after the accident, and that only six weeks after the second accident on board the GLAFKI, he was suffering such damage to and pain in his back that he was unable to return to work. Medical evidence was introduced to establish that an operation which Britt subsequently underwent might have been necessitated by injuries such as Britt described.
 
 
 4
 Vox and Peruana, however, introduced evidence showing that Britt had first suffered a back injury in 1951, and that in 1958 Britt suffered a more severe back injury. The doctor who treated Britt in 1958 diagnosed a degenerative lumbosacral intervertebral syndrome and recommended that Britt undergo surgery, including a laminectomy and spinal fusion. Britt did not submit to surgery, but was warned that he should do no heavy lifting. The record shows that Britt did not follow his doctor's advice and the only work he has done since 1958 has been manual labor. Moreover, when Britt was required to have an operation in 1970, it was a laminectomy and spinal fusion-- the same operation recommended in 1958.
 
 
 5
 The defendants also introduced evidence showing that when Britt sought medical treatment following the January 9, 1970 injury aboard the GLAFKI, he sought treatment only for an injury occurring to his hand, and made no complaints about any back injury or pain to the attending physician. In fact, in five visits to physicians subsequent to the GLAFKI incident, Britt made no reference to any back injury resulting from the accident. Britt did, however, seek medical assistance for severe back pain on February 20, 1970. When Britt sought treatment on February 20, Dr. Dolch made an entry on Britt's medical record based on what Britt told him about his back condition. The entry was as follows: 'Last Saturday pitched flour and got backache that night and have had a backache since.' (Britt's work records showed that on February 14, 1970, Britt had worked 12.5 hours loading bagged flour.) One expert witness testified that it was conceivable that the flour-pitching could have necessitated the surgery, and that, since Britt had returned to rather vigorous activity after the October 23, 1969 injury aboard the MARANON, there was a reasonable medical probability the bulged disc Britt suffered from was associated with an incident subsequent to the October 1969 injury.
 
 
 6
 One of Britt's rejoinders to this evidence is that Britt's statement to Dr. Dolch and the medical entry resulting from the conversation relative to pitching flour on February 14 were not competent evidence on which the trial court could properly rely. This contention is without merit, since statements made for purposes of medical diagnosis or treatment which descreibe medical history or the general cause of an ailment are not excluded by the hearsay rule. 6 Wigmore on Evidence 1718- 20 (3d ed. 1940); McCormick on Evidence 292 (2d ed. 1972); Proposed Federal Rules of Evidence 803(4) and comment. Yet there was more than this contradiction which could have led the judge to discount Britt's testimony. Britt's credibility was shown, through intensive cross-examination and the introduction of substantial evidence at odds with his testimony, to be so suspect that the district judge commented that 'the Court would be justified in disbelieving Plaintiff when what he says is even impliedly contradicted.' Confronted as we are with substantial evidence that supports the district court's conclusion, and with the court's determination that Britt's testimony is not believable, we are not 'left with the definite and firm conviction that a mistake has been committed.' United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Thus, the lower court's findings are not clearly erroneous. Fed.R.Civ.P. 52(a). We are particularly reluctant to set aside the court's findings when to do so would require us to accept the testimony of a witness found not to be credible by the lower court. See Chaney v. City of Galveston, 5 Cir., 1966, 368 Fed.2d 774, 776.
 
 
 7
 Britt also contends that the trial court's findings were wrong because Vox and Puruana had an obligation to show by the preponderance of the evidence that a subsequent injury or prior condition were producing causes of Britt's injuries and damages, and the record does not support a conclusion that they sustained such burden. We think Britt misconceives his own responsibilities. On order to recover under the theory he advanced at trial, Britt was required to show that the GLAFKI and MARANON accidents were the proximate cause of his injury. Vox and Peruana were not obligated to prove they were not responsible for damages suffered by Britt in order to avoid liability.
 
 
 8
 We also uphold the lower court's finding that Britt's loss of ability to have sexual relations was not attributable to either one or both of the defendants. Britt testified his inability to have sexual relations commenced after his fall of January 9, 1970, on the SS GLAFKI, and denied having any such difficulties prior to that time. But a Dr. York testified, and his records showed, that on December 17, 1939, over three weeks prior to the GLAFKI incident, Britt complained of an inability to have sexual relations, of pain in his left testicle, and of cold genitalia. That same day, Britt filled a prescription for Afrodex, an aphrodisiac commonly used to aid impotency, at the Taylor Pharmacy. Furthermore, there was evidence that a few months after the 1958 accident previously referred to, Britt complained to his doctor of pain in his left testicle-- again, the same symptom Britt attributed to his accidents some twelve years later. There was further evidence that, even assuming Britt's condition was physiological in origin, his inability to have sexual relations was not logically associated with his back condition because the area of injury to Britt's back did not involve the area of the nerve distribution system to the penis and genital organs. Thus, the district court's conclusion is supported by substantial evidence and therefore not clearly erroneous.
 
 
 9
 Britt's remaining contentions are of less merit, and we address them only briefly.
 
 
 10
 ( 1) The contention that the award of damages for permanent disability and loss of wage earning capacity is grossly inadequate cannot be sustained. It must be remembered that the court found that a substantial part of Britt's disability could not be attributed to the defendants or to the accidents on the MARANON and the GLAFKI. If that premise is correct, and we have concluded that it is, there was no error in the court's refusal to hold Vox and Peruana liable for the totality of Britt's diminished earning capacity. Moreover, Dr. Wilk, who performed part of the back surgery on Britt, stated that Britt should be able to return to longshoreman work as long as he is in a supervisory capacity or does not engage in lifting objects in excess of 50 pounds. While Britt contends that he has been unable to perform any substantial work, doubt was cast on this assertion when defendants introduced evidence linking Britt to paint contracting work. In sum, we cannot say that the quantum of damages under these peculiar circumstances is so clearly out of measure as to be clearly erroneous. See Neal v. Saga Shipping Co., 5, Cir., 1969, 407 F.2d 481, 487, cert. denied, 395 U.S. 989, 89 S.Ct. 2143, 23 L.Ed.2d 775.
 
 
 11
 ( 2) Britt is correct in contending that the trial court erred in not entering judgment for $4,144.31 for past medical expenses already paid by Texas Empooyers' Insurance Association. Both Vox and Peruana recognize that entry of such a judgment was proper. While we have been informed that Texas Employers' will forego asserting their medical lien for this amount, the better procedure is for the lower court to correct is judgment by awarding Britt the amount owing for past medical expenses.
 
 
 12
 ( 3) The failure of the court to enter an award of interest is not erroneous. The award of prejudgment interest is discretionary with the court, and 28 U.S.C. 1961 entitled Britt to postjudgment interest calculated from the date of entry of judgment. See Sandoval v. Mitsui Sempaku K. K. Tokyo, 5 Cir., 1972, 460 F.2d 1163, 1171.
 
 
 13
 ( 4) During discovery, Britt's counsel requested Vox to furnish pictures showing the configuration of the GLAFKI and the area of the ship in which the accident occurred. At the time counsel for Vox replied to this request, such photographs were not in existence. He subsequently obtained them, but did not provide copies to Britt's counsel. The introduction of these photographs at trial several to impeach Britt and undermine his credibility. Britt contends that the district court should have imposed sanctions against Vox for its counsel's failure to procide Britt with these photographs prior to their use at trial. Counsel for Vox admitted at oral argument that the photographs had been requested, and that he should have furnished them to plaintiff. Counsel's excuse was that he forgot to do so. Such behavior is not to be tolerated, but the district court's decision not to invoke sanctions was correct. There was no order by the court compelling the production of photographs which was ignored. Under the circumstances in this case, only violation of an order compelling discovery issued under Fed.R.Civ.P. 37(a) could be punished by the sanctions permitted under Fed.R.Civ.P. 37(b). See C. Wright, Law of Federal Courts 90, at 395-396 (2d ed. 1970). Britt requests on appeal that we reverse this inaction, but it appears that the decision whether to impose sanctions for a failure to make discovery rests with the district judge and not the appellate courts. See Diaz v. Southern Drilling Corp., 5 Cir., 1970, 427 F.2d 1118, 1126, cert. denied, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115; Notes of Advisory Committee on Rules accompanying Rule 37(b).
 
 II. PERUANA'S CONTENTIONS
 
 14
 Britt's injury on the MARANON occurred when climbing down a ship's ladder into the hold. Bulk zinc ore, which was being loaded into the hold, had packed around and behind the rungs of the hatchway ladder, causing Britt to slip and fall off the ladder while descending. It is not disputed that the zinc ore was packed around the ladder as the district court found, nor is it disputed that Britt hurt his back in the fall. Peruana claims first that the presence of an alternative, safe route into the hold precludes a finding that the MARANON was unseaworthy. There were, in fact, 'safety ladders' available which apparently did not have zinc ore packed around them. The problem with Peruana's argument is that it necessarily supposes that Britt voluntarily assumed a risk when he went down the main ladder, a risk for which he then bore the consequences. Peruana would thus have us to what is not permissible-- invoke the doctrine of assumption of risk against the longshoreman. The Arizona v. Anelich, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075 (1936); Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1938). Of course, mere knowledge of unseaworthiness does not preclude recovery. Manning v. M/V Sea Road, 5 Cir., 1965, 358 F.2d 615, 617; Smith v. United States, 4 Cir., 1964, 336 F.2d 165, 169. While knowledge of an alternative, safe route could possibly have indicated comparative negligence or contributory fault, Manning v. M/V Sea Road,supra, 358 F.2d at 617; Smith v. United States, supra, in no case can it be a bar to recovery. Palermo v. Luckenbach S.S. Co., 355 U.S. 20, 78 S.Ct. 1, 2 L.Ed.2d 3 (1957). Thus, in Manning v. M/V Sea Road, 5 Cir., 1969, 417 F.2d 603, we reversed the decision of a lower court which held that the choice of one route over another in effect made the longshoreman wholly responsible for injuries resulting from taking the unsafe route. 417 F.2d at 605-607.
 
 
 15
 Apparently anticipating the lack of success of its first argument, Peruana argues next that, as a matter of law, Britt negligently contributed to his own injury. While contributory negligence is an elusive concept, Dean Prosser described it as 'conduct which involves an undue risk of harm to the actor himself.' Prosser, Law of Torts 65, at 418 (4th ed. 1971). We know from this record that Britt was the second man to descend the ladder in question; in fact, Pedro Gonzales, reached the bottom of the ladder without mishap. We cannot say that anyone descending a ladder presenting possible danger, but which has just been passed safely by a coworker, is, as a matter of law, unreasonably risking harm to himself. Thus, we decline to displace the trial court's decision which found no contributory fault.
 
 III. VOX'S CONTENTIONS
 
 16
 Vox, like Peruana, does not seek to have us set aside the lower court's findings of fact. Rather, it contends that, even accepting those findings, as a matter of law no case for liability has been made out concerning the accident on the GLAFKI. Britt maintained that he had been standing on top of a hatch coaming, serving as a signalman directing the loading of grain into the GLAFKI. He claimed that while pulling on a rope attached to the grain spout, the rope broke and he fell to the deck; he also claimed to have fallen from the hatch coaming because there was no catwalk on which to stand while doing his job.
 
 
 17
 Vox introduced photographs showing that the GLAFKI did have catwalks, and claimed that it was unlikely that Britt actually fell from a hatch coaming. Vox also introduced the testimony of one Wessendorf, who had been loading the grain with Britt. Wessendorf's testimony in large part contradicted Britt's story. Wessendorf stated that Britt had been on a catwalk, not a coaming, and that they had not been using ropes or tag lines in the manner described by Britt. Vox maintains that this evidence exonerates it as a matter of law from any liability.
 
 
 18
 There are important shortcomings in Vox's argument. While the court noted that Britt's credibility was dubious, it also commented that Wessendorf was not altogether believable. Wessendorf maintained he never saw Britt take any fall, but we know that Britt did in fact have an accident aboard the GLAFKI, one which resulted in serious injury to his hand and thumb and some injury to his back. Wessendorf also admitted that the work was being done in rainy, misty weather, and that he did find Britt on his back after Britt fell to the deck. With such conflicting testimony we cannot say that the trial court erred in accepting some of each witness' testimony and finding negligence on the part of the vessel which caused Britt's injury.
 
 
 19
 The judgment below is affirmed, and the case is remanded to the district court to amend the judgment in accordance with this opinion.