Abdallah W. TAMARI, Ludwig W. Tamari, Farah Tamari, Co-partners d/b/a Wahbe Tamari & Sons Co., Plaintiffs,

v.

BACHE & CO. (LEBANON) S.A.L., a Lebanese corporation, Defendant-Appellee.

Appeal of Robert P. HOWINGTON, Jr., et al.

No. 83–1950.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 1984.

Decided Feb. 27, 1984.

John W. Hough, Howington, Elworth, Osswald & Hough, Chicago, Ill., for plaintiffs.

James W. Collins, Boodell, Sears, Sugrue, Giambalvo & Crowley, Chicago, Ill., for defendant-appellee.

Before BAUER and FLAUM, Circuit Judges, and SWYGERT, Senior Circuit Judge.

BAUER, Circuit Judge.

Plaintiffs' former counsel, the law firm of Howington, Elworth, Osswald & Hough (the Firm), appeals from the district court's order that held it and the plaintiffs jointly liable for certain costs and fees incurred by the defendant Bache & Co. (Lebanon) S.A.L. (Bache). Because the Firm is no longer involved in the litigation between the plaintiffs (Tamaris) and Bache, the Firm is contesting only the assessment of fees and costs against the Firm itself. Upon careful examination of the record, we affirm the district court's order.

## I. BACKGROUND

This appeal concerns a single episode in a case with a protracted history. In December 1975, the Tamaris filed an action

against Bache alleging that Bache defrauded them of more than two million dollars in violation of Sections 4b and 4c of the Commodity Exchange Act, 7 U.S.C. §§ 6b & 6c (1983). Discovery in the case has taken several years. The district court ordered the Tamaris and the Firm to pay the fees and costs at issue here on the ground that the Tamaris disobeyed the court's discovery orders.

The district court's order was the culmination of a series of events surrounding Bache's attempts to depose the Tamaris. On June 24, 1982, the district court ordered the parties jointly to present a deposition schedule to the court on September 16, 1982. R. 25. At the September 16 status hearing, the parties offered a proposed schedule under which the three Tamari brothers would be deposed by October 12, 1982. The Firm told the court: "[W]e have got a tentative schedule .... My clients, the Tamaris, would be deposed in October. We still have to confirm the exact dates with them and I also have to check on their availability to come to Chicago at that time." R. 62, at 5. The court remarked that, in the absence of "something very dramatic," the Tamaris' depositions should be completed by the end of October 1982. *Id.* at 46. The court's minute order that day stated that "[p]laintiffs [sic] depositions are to be completed by October 27, 1982." R. 27. The October 27 deadline also appeared in two letters, dated October 7 and October 13, that Bache's attorneys sent to the Firm. R. 31, Exhibits E & F. On September 20, the court entered an order granting Bache's motion to compel the Tamaris to produce certain documents at least five days before their depositions. R. 29.

At the October 27 status hearing, the court granted Bache's motion to dismiss on the ground that the Tamaris had not appeared for their depositions and had not complied with the court's order to produce the documents. R. 32, at 63. The Firm attempted to justify the Tamaris' failure to appear by stating only that the Tamaris were busy. The Firm did not request an evidentiary hearing or an opportunity to file a response to Bache's motion to dismiss.

On November 1, 1982, the Tamaris filed a motion to vacate the dismissal order on the grounds that the Firm had not regarded October 27 as a deadline and that most of the documents that the court ordered them to produce had been destroyed. R. 34. Before ruling directly on the motion, the court ordered Bache's attorneys to depose the oldest Tamari brother, Abdallah, to determine whether the Tamaris had been aware of the deposition and discovery deadlines. R. 35. Abdallah Tamari was deposed on November 2. On February 7, 1983, the district court granted the Tamaris' motion to vacate on the ground that the Tamaris "were not informed by their counsel of the October 27 deposition cut-off date .... [C]ounsel inaccurately conveyed to his clients the substance of the court's order." R. 39, at 2.

Bache filed a motion on March 7, 1983, for expenses it incurred as a result of the Tamaris' failure to meet the October 27 deadline. R. 43. The expenses included attorneys' fees and costs for taking Abdallah Tamari's deposition and for submitting a motion in opposition to the Tamaris' motion to vacate. Both parties fully briefed the motion, R. 50 and 54, and neither party requested an evidentiary hearing. The Tamaris, who are Lebanese citizens, contended in their brief that the war in Beirut, Lebanon, justified their failure to appear for their depositions in October and made it impossible to produce the requested documents. On May 11, 1983, the court granted Bache's motion for fees and costs under Federal Rule of Civil Procedure 37. R. 59. The court found the Tamaris' arguments "unpersuasive" because "[n]one of the three plaintiffs were in Beirut at the relevant times" and because any difficulty in obtaining the requested documents "could be handled in some way other than a simple failure to agree to deposition dates. There is no indication that plaintiffs seriously discussed these particular problems with defendant." R. 59, at 1–2. The court ruled that the expenses requested were reasona-

ble, and assessed the fees and costs jointly against the Tamaris and the Firm.

## II. RULE 37(B) SANCTIONS

■ Federal Rule of Civil Procedure 37(b) provides that a court may impose various sanctions on a party or his attorney who fail to comply with a court order. Rule 37(b) states, in part, that a court "shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(b). The sanctions outlined in Rule 37 provide a district court with valuable tools for preventing the parties to a lawsuit from "unjustifiably resisting discovery." Fed.R.Civ.P. 37 advisory committee note. The district court has broad discretion in imposing sanctions, and thus we will overturn a district court's sanctions only where the court has abused its discretion. *See, e.g., National Hockey League v. Metro Hockey Club,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); *Hindmon v. National-Ben Franklin Life Insurance Co.,* 677 F.2d 617, 620 (7th Cir.1982). We find that the district court did not abuse its discretion here.

### A. The Requirement of a Court Order

■ The Firm argues that although Rule 37(b) gives a court authority to impose sanctions when a party fails to comply with a court "order," a party seeking Rule 37(b) sanctions first must file a motion to compel discovery. The Firm further contends that only after the court has ordered compliance with the motion to compel, and the other party fails to comply, may the court properly impose sanctions. *See* 4A J. Moore, J. Lucas, & D. Epstein, Moore's Federal Prac-

tice ¶ 37.03[2.1] (2d ed. 1983). The Firm concludes that because Bache did not file a motion to compel, the district court could not use Rule 37 to impose sanctions upon it.[1]

The Firm misconstrues the Rule 37 order requirement. Although a motion to compel usually precedes the imposition of Rule 37(b) sanctions, a formal motion is not always necessary. In general, where a party has received adequate notice that certain discovery proceedings are to occur by a specific date, and that party fails to comply, a court may impose sanctions without a formal motion to compel the discovery from the opposing party. For example, in *Properties International, Ltd. v. Turner,* 706 F.2d 308, 310 (11th Cir.1983), the court affirmed a district court's imposition of sanctions on the ground that the lower court's order that defendants provide the government "with complete discovery" was sufficient under Rule 37(b), since there is "no requirement that the opposing party move for [the Rule 37(b) ] order." Similarly, in *Charter House Insurance Brokers, Ltd. v. New Hampshire Insurance Co.,* 667 F.2d 600, 604 (7th Cir.1981), this court stated that an attorney's promise in open court to produce certain documents "could be treated as the equivalent of an order" for Rule 37(b) purposes. *See also Henry v. Sneiders,* 490 F.2d 315, 318 (9th Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974) (Rule 37(b) sanction upheld where district court orally had ordered defendant to produce records, since "[w]here oral proceedings unequivocally give a litigant notice that certain documents are to be produced, the absence of a written order does not preclude the entry of a default judgment for failure to comply."); *Jones v. Uris Sales Corp.,* 373 F.2d 644, 646–47 (2d Cir.1967) (proceedings in judge's chambers, where judge announced

---

1. The Firm also argues that the district court initially erred in dismissing the lawsuit without providing the parties with an evidentiary hearing or with an opportunity to submit briefs. Because none of the costs and fees here would have been incurred if the court had not dismissed the suit improperly, the Firm argues, it

should not be required to pay these expenses. This argument is untimely, however. The Firm did not request an evidentiary hearing or an opportunity to file a response when the district court dismissed the lawsuit, and we will not examine the propriety of the dismissal order at this stage of the proceedings.

that he would give counsel twenty-four hours to produce subpoenaed documents, treated as oral motion and order).

The Firm here received notice on numerous occasions that the depositions were to be completed by October 27, 1982. First, at the September 16, 1982, status hearing, the court told the parties that, in the absence of "something very dramatic," the Tamaris' depositions should be completed by the end of October 1982. Second, the court's minute order that day directed that the Tamaris' depositions be completed by October 27, 1982, the date of the next status hearing. The Firm admits that it received a copy of the minute order. Third, the court ordered the attorneys in chambers to complete the Tamaris' depositions by October 27. The court alluded to this conversation at the status hearing on October 27, during the following colloquy with one of the Firm's attorneys, Mr. Stephens:

THE COURT: No, I'm predisposed to dismissing this case.

Mr. Stephens, we all knew that if [the Tamaris] failed to appear for their depositions by that October date I would dismiss the case.

MR. STEPHENS: Well there was nothing indicated by the Court that that would take place.

THE COURT: We all talked about it in chambers. These people have failed to appear for their depositions for years. I gave them one more date. I told them to produce their documents and appear. It was perfectly clear to all of us that if they failed to appear the game was over—and it has been a game....

R. 63, at 6. Of further significance are two letters that Bache's attorneys sent to the Firm. R. 31, Exhibits E & F. In both letters, dated October 7 and October 13, Bache's attorneys reminded the Firm that the court had ordered the Tamaris to appear for their depositions by October 27, 1982. Each letter requested that the Firm provide the exact dates when the Tamaris would appear for their depositions.

■ These occurrences normally would provide sufficient notice to obviate the re-

quirement of a formal motion to compel in a Rule 37(b) case. Yet although Rule 37(b) allows a court to assess expenses against a party's attorney, this is an unusually harsh penalty. We thus are reluctant to uphold this type of sanction in the absence of a formal motion to compel, even when an attorney has received substantial notice otherwise sufficient to justify Rule 37(b) sanctions. Our reluctance is overcome here, though, because the Firm also had an opportunity before the court imposed this sanction to submit an extensive brief regarding the propriety of this sanction. The Firm thus had ample opportunity to explain why the Tamaris failed to appear for their depositions.

In its brief, the Firm contended that it had not regarded the October 27 date as a deadline:

Because of what the court stated on September 16, 1982, to the effect that either by the end of October the Tamaris' depositions had gone forward or for some very good reason they had not, plaintiffs' counsel misunderstood the minute order dated September 16 as actually fixing a final October 27 deadline for the depositions.

R. 54, at 9. The district court found the Firm's brief unpersuasive, and it granted Bache's motion for fees and costs. Because the Firm received both adequate notice of the October 27 deadline and an adequate opportunity to explain why it should not be assessed expenses, the Rule 37 order requirement was met here.

### B. The Degree of Culpability

■ The Firm next contends that a court may not impose Rule 37(b) sanctions on a party unless that party violates a court order because of wilfullness, bad faith, or fault. The weight of authority, however, holds that the culpability of a party who fails to comply with a court order determines only which sanctions the court should impose and not whether any sanctions are appropriate at all. *See, e.g., Societe Internationale v. Rogers*, 357 U.S. 197, 208, 78 S.Ct. 1087, 1094, 2 L.Ed.2d

1255 (1958); *Marquis v. Chrysler Corp.*, 577 F.2d 624, 642 (9th Cir.1978). Courts thus have held that negligent failure to follow discovery proceedings may trigger sanctions. *See, e.g., Marquis v. Chrysler Corp., id.; David v. Hooker, Ltd.*, 560 F.2d 412, 418–20 (9th Cir.1977); *Fautek v. Montgomery Ward & Co.*, 96 F.R.D. 141, 145–46 (N.D.Ill.1982).

■ We find that the Firm at least was negligent in not informing the Tamaris of the October 27 deadline. As we have discussed, the Firm received adequate notice of the deposition deadline. There was no evidence, however, that the Firm ever told the Tamaris that their depositions had to be completed by October 27.

The Firm argues that it was unable to meet the deposition deadline because the documents that the court ordered it to produce five days before the depositions were unavailable due to the fighting in Beirut, Lebanon. The district court ruled that this reason did not excuse the Firm's failure to schedule the Tamaris' depositions or to discuss the scheduling problems with Bache. R. 59, at 2.[2] This conclusion was not an abuse of the court's discretion.

In accordance with the authorities noted above, the district court considered the parties' culpability to determine what type of sanction to impose. The court thus entered an order on February 7, 1983, vacating the earlier order to dismiss the case, on the ground that the Tamaris "were not informed by their counsel of the October 27 deposition cut-off date," and therefore they "had not wilfully violated the court's order." R. 39, at 2.

### C. The "Reasonable Expenses" Requirement

■ The Firm next contends that the $10,802.08 in fees and costs awarded Bache is excessive. Rule 37(b) allows the court to award only "reasonable expenses." The Firm's principal argument seems to be that the November 2, 1982, deposition of Abdal-lah Tamari was too extensive. The district court had ordered the Bache attorneys to depose Abdallah Tamari solely to determine whether the Tamaris had ignored wilfully the court's October 27 deposition deadline. The court noted that "the deposition shouldn't be all that lengthy." R. 64, at 22.

At first blush, the November 2 deposition does seem excessive. Two attorneys represented Bache, the questioning lasted several hours, and the transcript is 163 pages long. Several factors assuage our concerns, however. The district judge, who is best able to determine whether the deposition was conducted in accordance with her own instructions, found that Bache's request for fees and costs was reasonable, and specifically found that it was "not extravagant" to have two attorneys depose Tamari. R. 59, at 2.

Our own review of the deposition confirms the judge's opinion. Although some questions during the deposition were discursive or repetitive, the questions generally dealt with the communications between the Tamaris and the attorneys, and with the status of the documents that were the subject of the court's earlier discovery order. Moreover, Tamari's nonresponsive answers, interruptions by Tamari's attorneys, and the cross-examination by Tamari's attorneys, which alone consumed some twenty pages, *see* R. 57, at 126–43 & 161–63, contributed substantially to the deposition's length.

The Firm also has not shown as unreasonable any of the other expenses, most of which were incurred during Bache's opposition to the Tamaris' motion to vacate the dismissal order. Again, the district court is familiar with the many circumstances surrounding this case. We will not disturb the court's finding that the expenses were reasonable absent a clear abuse of discretion. No such abuse has been shown here.

---

2. Indeed, the Firm did not mention the Beirut situation when it first attempted to explain why the Tamaris had not appeared for their depositions at the October 27 status hearing. Rather, the Firm merely stated that the Tamaris are so busy that "it is not easy for them to take an entire week out of their schedule." R. 63, at 3.

## D. Appellate Costs

 Bache submits that it also should be reimbursed for the fees and costs that it has incurred in connection with this appeal. We have found no authority directly addressing this somewhat novel contention. The Tenth Circuit decided a similar issue in *Ohio v. Arthur Andersen & Co.*, 570 F.2d 1370 (10th Cir.), *cert. denied*, 439 U.S. 833, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978), where the court affirmed a district court's award of expenses for appellate costs that the state of Ohio incurred in an earlier appeal where the opposing party challenged only the validity of a discovery order. Although Bache here seeks appellate expenses incurred to secure its award imposed for the opposing parties' disobedience of a discovery order, *Ohio* is instructive nonetheless to show that an award of appellate expenses may be proper when a party has been forced to defend a district court's discovery order on appeal.

We conclude that awarding appellate expenses to Bache is consistent with the mandate of Rule 37(b). The Rule awards expenses "caused by the failure" of the disobedient party to comply with a court order. Bache's appellate costs essentially were caused by the Tamaris' and the Firm's failure to comply with the court's original deposition deadline. When the Firm chose to appeal the court's imposition of the Rule 37(b) sanction, it caused Bache to incur additional expenses in order to defend the court's sanction. *See also Aerwey Laboratories, Inc. v. Arco Polymers, Inc.*, 90 F.R.D. 563, 565–66 (N.D.Ill.1981) (Rule 37(a) sanctions "should encompass all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly.").

In addition, an important policy consideration weighs heavily in favor of awarding appellate expenses to Bache. Requiring a party to bear these costs could offset substantially the very award that the party has obtained. This would create a disincentive for seeking sanctions in the first place and thus undermine the purposes behind Rule 37(b).

## III. CONCLUSION

Rule 37(b) sanctions give the district court significant means for assuring that litigants comply with discovery orders. These sanctions are especially appropriate in a case like this, where attempts to complete discovery have dragged on for years. We thus will not second-guess the district court's decision to impose sanctions here.

Because the district court has not abused its discretion, we affirm the court's award of fees and costs. Bache also is awarded the reasonable fees and costs that it incurred in connection with this appeal.

AFFIRMED.