BERNARD AND BARBARA J. HILLIG, ET AL.,[1] PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 23150-88, 23151-88, 23152-88, 23153-88, 23154-88, 23155-88, 29833-88.

Filed March 27, 1991.

*Steven R. Mysliwiec,* for the petitioners.[2]
*Karen E. Chandler,* for the respondent.

OPINION

WELLS, *Judge:* This opinion arises out of our order to show cause why sanctions should not be imposed upon either or both of the attorneys, Norman V. Handler and Robert D. Courtland, who represented petitioners in the proceedings in this Court leading to our Memorandum Opinion in *Hillig v. Commissioner,* T.C. Memo. 1989-476, vacated and remanded 916 F.2d 171 (4th Cir. 1990). In those prior proceedings, we imposed the sanction of dismissal for petitioners' failure to comply with an order

---

[1] Cases of the following petitioners have been consolidated herewith: Louis D. and Carol B. Napoli, docket No. 23151-88, Joel B. and Susan G. Bowers, docket No. 23152-88, Barry G. and Elizabeth M. Brotman, docket No. 23153-88, Alfred P. and Elizabeth M. Coccaro, docket No. 23154-88, Robert L. Hamm, docket No. 23155-88, and Barry G. and Elizabeth Brotman, docket No. 29833-88. Except as otherwise noted, for convenience we will refer to the foregoing consolidated cases collectively as "the instant case."

[2] *Jacob A. Stein,* for attorney Robert D. Courtland; *Jerry R. Goldstein,* for attorney Norman V. Handler.

compelling discovery (Rule 104(c)(3)),[3] and for their failure properly to prosecute (Rule 123(b)). We also noted petitioners' violation of several other Rules and violation of this Court's standing pretrial order. The Fourth Circuit vacated our dismissal of petitioners' case, agreeing that sanctions were justified but disagreeing with our having imposed the sanctions upon petitioners rather than their attorneys. In that regard, the Court stated:

We do not condone the conduct of taxpayers' counsel. The Tax Court rightly determined that their conduct justified the imposition of sanctions. We hold only that sanctions should not have been imposed on the taxpayers. Therefore, we vacate the judgment of dismissal and remand for reinstatement of the case. *Also, the Tax Court may consider imposing sanctions on the taxpayers' counsel.* [916 F.2d at 175; emphasis supplied.]

The issues for consideration in this opinion are: (1) Whether we should impose such sanctions on petitioners' counsel and, (2) if so, whether the sanctions should apply to both Mr. Handler and Mr. Courtland or just one of them, and (3) if sanctions are to be applied, the amount of the sanctions. Both Mr. Handler and Mr. Courtland submitted affidavits in response to the Court's order to show cause, and a special hearing was held to receive evidence on the sanctions issue on February 11, 1991.

Authority to impose sanctions upon a party's attorney for failure to comply with certain enumerated discovery orders is contained in Rule 104(c)(4), which provides in relevant part:

(c) Sanctions: If a party * * * fails to obey an order made by the Court with respect to the provisions of Rule 71, 72, 73, 74, 75, 76, 81, 82, 83, 84, or 90, then the Court may make such orders as to the failure as are just, and among others the following:

* * * * * * *

(4) In lieu of the foregoing orders or in addition thereto, the Court may * * * require the party failing to obey the [discovery] order or counsel advising such party, or both, to pay the reasonable expenses, including counsel's fees, caused by the failure, unless the Court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

---

[3]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code.

As discussed more fully below, petitioners, represented by their counsel, violated an order of this Court under Rule 104(b) pertaining to the provisions of Rule 72. We therefore will apply Rule 104(c)(4). See *Rechtzigel v. Commissioner,* 79 T.C. 132, 133 (1982), affd. 703 F.2d 1063 (8th Cir. 1983).

Rule 104(c)(4) is derived from the last sentence of Rule 37(b)(2) of the Federal Rules of Civil Procedure (hereinafter FRCP). Note to accompany Rule 104, 85 T.C. 1133; see also Note to accompany Rule 104(c), 60 T.C. 1124.[4] Accordingly, we look to Federal court decisions involving FRCP 37(b)(2) in applying Rule 104(c)(4), as well as to the decisions of this Court. *Dusha v. Commissioner,* 82 T.C. 592, 598- 599, 605 (1984). See also *Vermouth v. Commissioner,* 88 T.C. 1488, 1494-1495 (1987). The Supreme Court has stated, in a case involving the imposition of monetary sanctions against attorneys, that "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.' " (Brackets in original.) *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763-764 (1980) (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.* 427 U.S. 639, 643 (1976)).

As stated above, the Fourth Circuit agreed with this Court that sanctions were appropriate in the instant case, and only disagreed with our having imposed the sanctions on petitioners. At least two Circuit Courts have expressed the view that the *mildest* of the sanctions available under FRCP 37(b) (from which Rule 104(c) is derived) is to require the delinquent party or his attorney to pay the expenses incurred by the other party arising out of the delinquent party's failure to obey a Court order. *United States v. Sumitomo Marine & Fire Insurance Co.,* 617 F.2d 1365, 1369 (9th Cir. 1980) (discussed in *Vermouth v. Commissioner, supra*); *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066 (2d Cir. 1979). See also *J.M. Cleminshaw Co. v. City of Norwich,* 93

---

[4]As originally adopted, Rule 104(c)(4) did not authorize the Court to require the payment of expenses, including attorney's fees, for failure to follow Court orders, but only authorized the Court to treat such failure as a contempt. See Rule 104(c), 60 T.C. 1124. The relevant language of Rule 104(c)(4) relating to expenses was added by amendment effective July 1, 1986. See Note to accompany Rule 104, 85 T.C. 1132-1133.

F.R.D. 338, 349 (D. Conn. 1981). Due to petitioners' failure to comply with our discovery order and pursuant to the reasoning of the Fourth Circuit, we shall impose such monetary sanctions on counsel in the instant case.[5] Although this Court previously has imposed monetary sanctions on counsel pursuant to Rule 33(b),[6] this is the first occasion on which Rule 104(c)(4) has been applied to impose such sanctions on counsel.[7] We note that section 6673(a)(2), which was enacted as part of the Omnibus Budget Reconciliation Act of 1989, 103 Stat. 2106, 2401, does not apply herein.[8]

We now turn to the question of whether sanctions should be imposed upon both Messrs. Handler and Courtland, or just one of them. That is the issue upon which Messrs. Handler and Courtland focused attention at the special hearing held with respect to our order to show cause. Our analysis of the issue begins with the premise that Rule 104(c)(4) permits us, in our discretion, to hold one attorney responsible, or to apportion responsibility between the noncomplying party's attorneys.[9] While our dismissal of the instant case avoided the "finger pointing" attendant to

---

[5]At the May 17, 1989, hearing, which resulted in the dismissal of petitioners' case, this Court expressed its reluctance to dismiss the case and thereupon considered the imposition of lesser sanctions in lieu of dismissal. The lesser sanctions suggested by respondent at that hearing, however, would have inured to the disadvantage of petitioners, as the majority of such sanctions involved preventing the introduction of certain evidence and finding certain issues in respondent's favor. Mr. Courtland at the hearing characterized the lesser sanctions suggested by respondent as "tantamount to dismissal."

[6]*Versteeg v. Commissioner,* 91 T.C. 339 (1988).

[7]This Court previously has applied Rule 104(c)(4) to impose such liability directly on the taxpayer. *Voss v. Commissioner,* T.C. Memo. 1989-238. We do not intend, by our reliance on Rule 104(c)(4), to preclude the application of other Rules or authority for imposing sanctions where appropriate. Compare *Kumpf v. Commissioner,* 682 F.2d 67 (3d Cir. 1982).

[8]Sec. 6673(a)(2) is applicable to "positions taken after December 31, 1989" in proceedings pending on or commenced after such date. Omnibus Budget Reconciliation Act of 1989, sec. 7731(d), 103 Stat. 2106, 2402.

[9]See Note to accompany Rule 104, 85 T.C. 1132, 1133 (discretionary nature of Rule 104(c)(4)); *Weisberg v. Webster,* 749 F.2d 864, 874 (D.C. Cir. 1984) (apportionment of expenses between client and counsel); *Dove v. CODESCO,* 569 F.2d 807, 810 (4th Cir. 1978) (suggesting imposition of costs directly upon the attorney responsible, namely the plaintiff's *local* counsel as opposed to the other attorney for the plaintiff); *Estate of Costner v. Phillips Petroleum Co.,* 121 F.R.D. 690, 691 n.1 (W.D. Okl. 1988) (finding no evidence of fault on the part of co-counsel and imposing sanctions only on other law firm under FRCP 16(f), which refers to FRCP 37); *Hawkins v. Fulton County,* 96 F.R.D. 416 (N.D. Ga. 1982) (holding one attorney personally liable for all fees; delegation of responsibility to another attorney who was never counsel of record did not excuse first attorney); cf. *J.M. Cleminshaw Co. v. City of Norwich,* 93 F.R.D. 338 (D. Conn. 1981) (imposing greater amount of costs, and a fine, on the co-counsel *primarily* responsible for client's discovery violations, but suggesting that *all* counsel of record have duty to supervise one another in the best interests of their client).

making such findings, the imposition of sanctions against the attorneys instead of petitioners requires that we follow the finger of responsibility to see where it points. We believe that such a course is consistent with the Supreme Court's view that sanctions are to be imposed on *"those whose conduct* may be deemed to warrant" them. *Roadway Express, Inc. v. Piper, supra* at 764. (Emphasis supplied).

Messrs. Handler and Courtland apparently have assumed that an apportionment of respondent's expenses between them might be made, as each has concentrated his efforts on minimizing his *own* apparent responsibility for petitioners' discovery failures. As explained below, we find that the evidence overwhelmingly points the finger of responsibility at Mr. Handler.

By way of background, the uncontroverted facts in the instant case are that Mr. Handler had served for many years as corporate counsel to petitioners and also had represented petitioners on the issues relating to the Federal income tax deficiencies involved in the instant case before the Internal Revenue Service (at the audit and appellate levels). Not being experienced in litigation before this Court, however, Mr. Handler arranged for Mr. Courtland, a tax litigation specialist, to render services in connection with petitioners' case before this Court. The petition in the instant case was signed by both Mr. Handler and Mr. Courtland, with Mr. Handler's name and signature appearing first.[10] Mr. Courtland, on May 16, 1989, submitted a written motion for leave to withdraw his appearance as petitioners' co-counsel of record. In the motion, Mr. Courtland cited as his reason for withdrawal Mr. Handler's failure to provide him with the documents and information needed to fulfill his responsibilities to this Court and to

---

[10]Rule 21(b)(2) provides:

Counsel of Record: Whenever under these Rules service is required or permitted to be made upon a party represented by counsel who has entered an appearance, service shall be made upon such counsel unless service upon the party is directed by the Court. Where more than one counsel appear for a party, service will be made only on that counsel whose appearance was first entered of record, unless that counsel notifies the Court, by a designation of counsel to receive service filed with the Court, that other counsel of record is to receive service, in which event service will be made only on the person so designated.

petitioners. This Court granted Mr. Courtland's motion to withdraw and dismissed petitioners' case on May 17, 1989.[11]

Mr. Handler and Mr. Courtland have presented contradictory accounts of who was responsible for various matters prior to Mr. Courtland's withdrawal. The primary representation to this Court by Mr. Handler in that regard was a five-page affidavit filed in response to this Court's show cause order.[12] Mr. Handler's affidavit paints the following picture of his understanding of the events that occurred. Mr. Handler convinced his clients to "retain" Mr. Courtland to represent them in connection with the proceedings before this Court. Mr. Handler was therefore "surprised" to see his name as co-counsel on the petitions filed with this Court and was told by Mr. Courtland that Mr. Handler's appearance was entered only so that Mr. Handler would receive copies of the pleadings directly from respondent. Mr. Courtland was to deal *directly* with petitioner Bernard Hillig in connection with the preparation for and actual litigation, including obtaining answers to respondent's interrogatories. Although Mr. Handler was to obtain certain documents upon being forwarded respondent's "updated list" of documents from Mr. Courtland, Mr. Handler was never given such list. Mr. Handler never stated that he was too busy to deliver the documents or to handle the case.

While the statements made in Mr. Handler's affidavit might, if uncontroverted, suggest that he was not primarily responsible for petitioners' discovery failures, they lose such exculpatory effect when viewed in the context of the other evidence presented at the special hearing held before this Court on the sanctions issue. Mr. Handler chose not to testify at such hearing except to respond to this Court's questions concerning the refusal of Mr. Handler to participate in a telephone conference with the Court and the other counsel in the instant case, as discussed below.

A notable example of the loss of "effectiveness" of Mr. Handler's affidavit, when viewed in connection with the other evidence in the instant case, involves the statement in

---

[11]At the special hearing on Feb. 11, 1991, this Court vacated its order allowing Mr. Courtland's withdrawal from the instant case pending consideration of the sanctions issue at hand. As noted *infra,* Mr. Courtland's withdrawal from the instant case will be reinstated.

[12]Mr. Handler, as described below, also responded to this Court's questions at the special hearing and, by his attorney, cross-examined witnesses testifying on behalf of Mr. Courtland.

the affidavit that Mr. Handler never received the "updated list" of documents needed by respondent, which documents Mr. Handler was supposed to obtain. The evidence developed at the special hearing indicates that, while such statement from the affidavit may be true in the most literal of senses, it carries no practical significance. Apparently what occurred is that respondent (by letter dated January 25, 1989, addressed to Messrs. Handler and Courtland) informally requested various documents and answers to questions. At a meeting held between counsel for respondent, Ms. Karen Chandler, Mr. Handler, and Mr. Courtland on February 14, 1989, Mr. Handler told Ms. Chandler that her document request was overly broad because respondent already *had* many of the requested documents in his possession from the audit and administrative proceedings. Ms. Chandler agreed that an updated document list would be provided by her assistant, Janel Hill. On March 15, 1989, Ms. Hill sent duplicate letters, one addressed to Mr. Handler and one to Mr. Courtland, listing the documents that already had been provided to respondent. Mr. Handler has not denied that he received such letter from Ms. Hill. In fact, a letter dated May 16, 1989, from Mr. Handler to Ms. Chandler (submitted as an exhibit to Mr. Courtland's Memorandum filed in the instant case in response to this Court's show cause order) makes direct reference to the letter from Ms. Hill, indicating that Mr. Handler possessed such letter. Therefore, apparently Mr. Handler *did* receive all information needed from respondent—he had the original document request and a list of documents already in respondent's possession. By process of elimination or subtraction then, Mr. Handler easily could have compiled the "updated list" of needed documents which he claims never to have received.[13]

Another matter with respect to which the affidavit loses its effectiveness involves the general nature of the represen-

---

[13]We note that the letters from Ms. Hill to Mr. Handler and Mr. Courtland are dated Mar. 15, 1989. Apparently, the original date by which petitioners' attorneys had promised to supply documents to respondent was Mar. 13, 1989. Thus, it may be that respondent was delinquent in not supplying an updated list of documents needed or already in possession until 2 days after the parties' originally contemplated deadline. However, that fact does not excuse Mr. Handler's subsequent conduct. We also note that Mr. Courtland testified that Mr. Handler had requested from Ms. Chandler a list of documents *already* in her possession rather than an updated list of needed documents.

tation arrangement and the suggestion in Mr. Handler's affidavit that Mr. Courtland would be dealing directly with Dr. Hillig. Mr. Courtland explained at the special hearing that it was common in his practice to deal with a client's attorney, rather than directly with the client, so as not to upset their preexisting relationship. On cross-examination of Mr. Courtland, such conclusion remained basically undisturbed; we found Mr. Courtland a very credible witness.

At the special hearing, Mr. Courtland also testified about the arrangement that existed between himself and Mr. Handler during the last week of April and the first week of May, when Mr. Courtland was ill. In Mr. Courtland's affidavit and in his testimony, Mr. Courtland stated that they had specifically agreed that Mr. Handler would supply the needed documents and answers to interrogatories during Mr. Courtland's absence from work. Mr. Handler's affidavit does not address the issue of Mr. Courtland's illness or whether any additional responsibilities were assumed by Mr. Handler during that period. Moreover, the testimony of Mr. Robert Freed, an attorney (who also was Mr. Courtland's friend), supports a conclusion that Mr. Handler failed to live up to his promises during the period of Mr. Courtland's illness. At the special hearing, Mr. Freed testified that, on the morning of May 17, 1989 (the same day that this Court dismissed petitioners' case), he spoke with Mr. Handler about the failure to provide documents. Mr. Freed stated that Mr. Courtland's illness was discussed and that Mr. Handler repeatedly indicated that he was sorry and that he had been very busy and under much pressure. While Mr. Handler's affidavit denies that he said he had been too busy to handle petitioners' case (and indicates that he accordingly refused Mr. Freed's suggestion to tell this Court he had been busy), Mr. Handler presented no other evidence refuting the substance or the highly apologetic tone of his conversation with Mr. Freed. In view of all of the evidence, we are convinced that Mr. Handler did promise to supply needed documents and information to respondent during the period of Mr. Courtland's illness and that Mr. Handler's failure to live up to such promise led directly to Mr. Courtland's withdrawal from the instant case.

Finally, we must comment upon Mr. Handler's refusal to participate in a telephone conference initiated by this Court. At the special hearing, this Court inquired about the reason for such refusal. Mr. Handler responded by stating that, in view of his lack of responsibility for the trial preparation work, he felt he had "nothing to add to the questions of where were the things." We find such excuse curious in light of the admission in Mr. Handler's affidavit that he was responsible for obtaining documents for respondent upon receipt of an updated document list. If Mr. Handler had not obtained such updated list, the telephone conference would have been an appropriate time to bring that matter to the Court's attention.

While Mr. Courtland contacted both respondent and this Court about his inability to obtain cooperation from Mr. Handler, Mr. Handler chose to avoid confronting the problem. While we do not believe that Mr. Handler's failures were due to bad faith,[14] a finding of bad faith is not required to impose the sanction of reasonable expenses under Rule 104(c)(4), a sanction much less severe than the sanction of dismissal. *Vermouth v. Commissioner*, 88 T.C. 1488, 1499 (1987); *Dusha v. Commissioner*, 82 T.C. 592, 600-605 (1984); *Liew v. Breen*, 640 F.2d 1046, 1050 (9th Cir. 1981); *Cine Forty-Second Street Theatre v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979); *Hawkins v. Fulton County*, 96 F.R.D. 416, 421 (N.D. Ga. 1982); *J.M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338, 349-350 (D. Conn. 1981). Rule 104(c)(4) states that sanctions *may* be imposed unless the Court finds that the discovery failure was "substantially justified" or that other circumstances make an award "unjust." In the instant case, neither of such conditions apply in the case of Mr. Handler. We find, however, that Mr. Courtland's justified reliance on Mr. Handler, and his substantial attempts to obtain Mr. Handler's compliance, would render sanctions against Mr. Courtland unjust.[15]

---

[14] The Fourth Circuit stated that the evidence in the instant case did not support a conclusion that the delay by counsel was "deliberate." *Hillig v. Commissioner*, 916 F.2d 171, 174 (4th Cir. 1990).

[15] We recognize that at the hearing held on May 17, 1989, we characterized the conduct of both Mr. Courtland and Mr. Handler as "inexcusable," stating that the two attorneys were "basically pointing fingers at each other." However, at the conclusion of that hearing, we stated our belief that in fact Mr. Courtland had been hindered by Mr. Handler. It was that

We now turn to the amount of the sanctions to be imposed against Mr. Handler. As noted above, Rule 104(c) provides for sanctions where a party "fails to obey an order" of this Court made with respect to one of several enumerated Rules, including Rule 72 (production of documents and things). In the event that a party fails to comply with such a Court order, Rule 104(c)(4) provides that this Court may "require the party failing to obey the order or counsel advising such party, or both, to pay the reasonable expenses, including counsel's fees, *caused by the failure.*" (Emphasis supplied.)

Rule 104(c)(4) is derived from the last sentence of FRCP 37(b)(2), and authorities construing the latter rule are relevant to its application. Those authorities underscore the requirement of a "court order" and the applicability of FRCP 37(b)(2) to expenses incurred *subsequent to,* and because of, a failure of compliance with such order. See *Liew v. Breen, supra* at 1050-1051 (remanding for segregation of expenses occurring before, as opposed to after, the magistrate's order regarding discovery); see also *Tamari v. Bache & Co. (Lebanon) S.A.L.,* 729 F.2d 469, 472-473 (7th Cir. 1984); *Stillman v. Edmund Scientific Co.,* 522 F.2d 798, 801 nn.6 & 7 (4th Cir. 1975); *Britt v. Corporacion Peruana de Vapores,* 506 F.2d 927, 932 (5th Cir. 1975); see also the cases cited in 4A Moore's Federal Practice, par. 37.03[2.1] at 37-62 to 37-64 (2d ed. 1990).[16]

In the instant case, this Court, on May 10, 1989, issued an order granting respondent's motion to compel production of documents pursuant to Rules 72(b) and 104(b). Such order required petitioners to produce the documents requested by respondent on or before May 16, 1989. Petitioners failed to comply with our order of May 10, 1989,[17] rendering Rule 104(c)(4) applicable with respect to the

---

belief which caused us to grant Mr. Courtland's motion to withdraw as counsel. Because we have exonerated Mr. Courtland in this opinion, in the order we will issue pursuant to this opinion, we will reinstate Mr. Courtland's withdrawal from the instant case.

[16]While FRCP 37(a)(4) provides for the award of expenses (including attorney's fees) incurred *in obtaining* a court order compelling discovery, Rule 104(c)(4), like the corresponding language of FRCP 37(b)(2), relates only to expenses caused by the failure to obey a court order.

[17]Although Mr. Handler sent a hand-delivered letter to Ms. Chandler dated May 16, 1989, that letter referred to several categories of documents as being "boxed-up" and in storage, to be forwarded "as soon as they are located." As noted by this Court at the May 17, 1989, hearing, such letter was insufficient to amount to compliance with this Court's order as petitioner had "not even given the timetable for when [the documents would] be produced."

counsel's fees and other reasonable expenses "caused by" such failure.

At the hearing on our show cause order, respondent submitted an affidavit of Ms. Chandler detailing her time spent "in connection with the conduct" of petitioners' attorneys in the instant case, and an affidavit of Mr. George E. Bowden, the Internal Revenue Service attorney responsible for the Fourth Circuit appellate proceeding concerning our order of dismissal. Respondent has requested reimbursement for such attorney time at the rate of $75 per hour. Ms. Chandler's affidavit includes 10 hours of attorney time spent on and after May 16, 1989, the date by which petitioners were ordered by this Court to produce documents. Of those 10 hours, 8 were spent preparing respondent's opposition to petitioners' motion to vacate our order of dismissal.

In objecting to the sanction of expenses for Mr. Bowden's time, counsel for Mr. Handler argued that the Fourth Circuit's reversal of our order of dismissal rendered the costs of petitioners' successful appeal inappropriate as a sanction. This Court then noted that the Fourth Circuit had allocated court costs equally between the parties. We agree that Mr. Handler cannot be said to bear responsibility for all of respondent's costs associated with petitioners' appeal of our order of dismissal. The costs incurred by respondent subsequent to our order of dismissal resulted *both* from petitioners' failure to comply with our discovery order *and* from this Court's action in dismissing petitioners' case. The same reasoning applies with respect to petitioners' prior motion to vacate our order of dismissal. Compare *Tamari v. Bache & Co. (Lebanon) S.A.L.,* *supra* at 475 (appeal costs awarded where delinquent party unsuccessfully challenged District Court's initial award of sanctions).

Based on the foregoing, we shall require Mr. Handler to pay the amounts requested by respondent for attorney time spent on and after May 16, 1989 (the date by which petitioners were ordered to produce documents), except as follows: (1) For Ms. Chandler's preparation and filing of respondent's opposition to petitioners' motion to vacate order of dismissal (July 27), we shall allow expenses for 4 hours of work instead of the 8 hours requested, and (2) we

shall allow compensation for one-half of the attorney time detailed in the affidavit of Mr. Bowden. Thus, Mr. Handler shall be ordered to pay respondent's expenses in the amount of $1,050, for 14 hours of attorney time at the requested rate of $75 per hour.

We note in conclusion that our power to impose monetary sanctions on attorneys under Rule 104(c)(4) may go beyond the imposition of purely "compensatory" sanctions. See *Carlucci v. Piper Aircraft Corp., Inc.,* 775 F.2d 1440, 1453-1454 (11th Cir. 1985); *United States v. Sumitomo Marine & Fire Insurance Co.,* 617 F.2d 1365, 1370-1371 (9th Cir. 1980); *J.M. Cleminshaw Co. v. City of Norwich, supra* at 360. In that regard, we note that Mr. Handler has, in what his attorney describes as a "self sanction," tendered his resignation from admission to practice before this Court. The matter of Mr. Handler's admission shall be dealt with by this Court's admissions committee, and a copy of the proceedings in the instant case shall be made a part of Mr. Handler's permanent record.

To reflect the foregoing,

*An appropriate order will be issued.*