**ROMARI CORPORATION,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 75–1838.**

United States Court of Appeals,
Fifth Circuit.

May 10, 1976.

Gail P. Fels, Leonard R. Fels, Coral Gables, Fla., for plaintiff-appellant.

Robert W. Rust, U. S. Atty., Miami, Fla., Scott P. Crampton, Asst. Atty. Gen., U. S. Dept. of Justice, Tax. Div., Washington, D. C., James E. Crowe, Jr., Gilbert E. Andrews, Elmer J. Kelsey, Michael J. Roach, Acting Chief, Appellate Sec., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before DYER and CLARK, Circuit Judges, and KRAFT *, District Judge.

KRAFT, District Judge:

The sole question presented by this appeal by Romari Corporation (Romari) is

---

* Senior District Judge of the Eastern District of Pennsylvania, sitting by designation.

whether the district court abused its discretion by a dismissal without prejudice of Romari's action under F.R.C.P. 37.[1] In the circumstances revealed in our review of the record we conclude the dismissal was just and affirm.

The essential facts are as follows: Internal Revenue Service (I.R.S.), on February 9, 1973, made a jeopardy assessment against Fernando and Edith Acosta in the sum of $286,538.95 for taxes and interest for the calendar year 1969. On October 29, 1973 I.R.S. served a notice of levy on United Management Company (United), seizing all property and rights to property of "Romari Corporation nominee of Fernando and Edith Acosta and Jorge Callejas" in United's possession. The notice of levy was accompanied by a notice of seizure of the right, title and interest of Romari in a promissory note made by United to the order of Fernando Acosta (Acosta) in the sum of $101,700, dated July 11, 1969.

Romari began this action for refund on July 17, 1974, asserting that its property had been wrongfully levied upon; that it had purchased the note, bearing the prior endorsement of Acosta to Jorge Callejas (Callejas) for full, adequate consideration on January 2, 1970; that the note was secured by a recorded second mortgage on real estate in Dade County, Florida, which had similarly been assigned by Acosta to Callejas and by Callejas to Romari; that Romari was not and had never been a nominee of Acosta or Callejas; that neither of the latter had any right, title or interest in the note and mortgage.

In the course of ensuing discovery proceedings the United States (government) gave timely notice of its intention to depose Romari through its president, Maria Elena Murillo Fernandez (Mrs. Fernandez) on January 9, 1975 at 10 A.M. Mrs. Fernandez testified that she was a citizen and resident of Costa Rica; that Romari was incorporated in 1968 or 1969 and that she had been its president since then; that she owned stock in Romari, but did not know how many shares she owned or whether she was the sole stockholder or how many shares were outstanding or whether there were other stockholders, who they were or how many shares they owned; that she performed no duties in the operation of Romari, received no salary and did not know whether there were any other corporate officers; that she left a Mr. Novarro in charge of everything.

Mrs. Fernandez further testified she bought the note and mortgage in Romari's name from Callejas on January 2, 1970 and paid $101,700 in currency; that she had removed $100,000 in currency from her safety deposit box in Republic National Bank on December 30, 1969, kept it at her abode until January 2, and added additional funds of her own to complete the purchase. As the government sought to discover the ownership and source of the $100,000 in currency, Mrs. Fernandez became increasingly vague and reluctant. She first generalized her answers, stating that the money came at various times from family and friends in Latin America. Urged to identify the nations she eventually named Columbia, Brazil and Costa Rica. Pressed as to times, she ultimately fixed 1968 and 1969. Pressed as well about the identity of the couriers, she declined to go further than herself, a brother and unidentified others. Pressed repeatedly as to number and amounts of cash deliveries she said she couldn't remember. Finally, she flatly refused to disclose the identity of any source

1. The pertinent portions of Rule 37 provide:
   (b) *Failure to Comply with Order.*

   . . . . .

   (2) *Sanctions by court in which action is pending.* If a party or an officer . . . of a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

   . . . . .

   (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

of the money upon the ground that such revelations might possibly subject such persons to the risk of prosecution or physical harm, because of possible violations of laws or regulations governing export of currency in one or more South American nations.

The deposition was recessed about noon and the government immediately filed a motion for an order compelling Mrs. Fernandez to answer questions concerning the identity of the persons whose cash formed a part of the $100,000 and the amounts of cash imported, on the ground that the facts sought were relevant, material, essential and unprivileged. At 1:30 P.M. the district court heard argument and orally granted the government's motion, subject to the right of the witness to invoke any privilege against self-incrimination. Because Mrs. Fernandez desired to return to Costa Rica, the deposition was resumed promptly thereafter, but to no avail. The witness was adamant in her refusal to disclose, in response to the questions of government's counsel, the identities of the persons whose funds allegedly created the aggregation of $100,000 in currency or the number of such persons.

The government, on January 16, 1975, filed its motion for sanctions, requesting the court to dismiss Romari's action, because of the refusal of its president to obey the court's order of January 9. Romari, on January 22, filed a lengthy document entitled, in part, "Opposition to Defendants Motion For Sanctions." Romari never filed any motion under F.R.C.P. 26(c) for protective order of any kind anent the deposition of Mrs. Fernandez. On February 19, 1975 the district court filed a memorandum and order dismissing Romari's complaint without prejudice unless, within 10 days, Mrs. Fernandez, Romari's president, provided the discovery sought. Romari made no effort to comply, but instead appealed.

Romari first contends that the information sought by the government was irrelevant to the issues in the action. Its argument lacks merit.

F.R.C.P. 26(b)(1) expressly provides that "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, [including] . . . the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." In the context of the discovery aspect of this case Romari or, as it may appear, its alter ego, Mrs. Fernandez was a nominee. Albeit, she denied being nominee of Acosta and/or Callejas, the government was not obliged to accept her statement. It was entitled to discover evidence of whose nominee she was; whether the $100,000 cash cache ever existed, and, if so, whose cash it was; whether the alleged contributors existed and whether they, or any of them, did make, or were financially able to make, the contributions attributed to them. See, *Interstate Cigar Co. v. Consolidated Cigar Co.* (2 Cir. 1963) 317 F.2d 744.

The remaining contentions of Romari may be summed up as asserting that the district court abused its discretion in imposing the drastic sanction of dismissal. *Campbell v. Eastland* (5 Cir. 1962) 307 F.2d 478, cited by Romari, as inapposite. *Societe Internationale Pour Participations Industrielles, et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), also cited by Romari, affords it no support. The discussion, in that case, of the constitutional limitations on the power of a court to dismiss an action without affording a hearing on the merits arose in the context of a discovery order, which the plaintiff claimed required it to violate Swiss bank secrecy laws with respect to bank records located in Switzerland. The record revealed that the plaintiff had made extensive efforts to secure waivers of the secrecy restrictions and had produced many documents pursuant to such waivers. Romari's only effort here has been to prevent any disclosure.

We are mindful of our decisions in *Bon Air Hotel Inc. v. Time Inc.* (5 Cir. 1967) 376

F.2d 118; *Dorsey v. Academy Moving & Storage, Inc.* (5 Cir. 1970) 423 F.2d 858 and *Dunbar v. United States* (5 Cir. 1974) 502 F.2d 506, but these cases do not teach that a district court may not dismiss an action under F.R.C.P. 37 under any circumstances. The order of dismissal is required by the rule to be "just".

Our perusal of this record discloses that the district court gave contemporaneous, fair warning of the probable consequence of a failure to obey its January 9th order. Mrs. Fernandez nevertheless obstinately refused to answer. Despite the evident lack of good faith on the part of Romari's president and the willful nature of her disobedience, as well as her gross indifference to the rights of the government, the district court's order of dismissal without prejudice expressly afforded her yet another opportunity to reconsider and obey within ten days. The opportunity was ignored. In these circumstances we deem the drastic penalty of dismissal to be just. *Von Der Heydt v. Kennedy* (1962) 112 U.S.App.D.C. 78, 299 F.2d 459.

Affirmed.