EDWARD P. DUSHA, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 23713–82.    Filed April 9, 1984.

Edward P. Dusha, pro se.
*David W. Johnson, Willie E. Armstrong, Jr.*, and *Richard Elliott*, for the respondent.

OPINION

PARKER, *Judge*: This case is before the Court on respondent's motion to dismiss as a sanction under Rule 104(c), Tax Court Rules of Practice and Procedure, for petitioner's failure to comply with this Court's discovery order dated October 19, 1983. For the reasons stated below, respondent's motion to dismiss will be granted.

I

*Background: Pleadings and Respondent's Discovery Efforts*

In his statutory notice of deficiency, dated June 24, 1982, respondent determined the following deficiencies in and additions to petitioner's Federal income taxes:

| Year | Deficiency | Sec. 6651(a)[1] | Sec. 6653(a) | Sec. 6654 |
|------|-----------|-----------------|--------------|-----------|
| 1979 | $10,482.48 | $2,600.98 | $524.12 | $434.94 |
| 1980 | 13,840.10 | 3,460.03 | 692.01 | 881.82 |

In the statutory notice, respondent determined that petitioner had unreported W-2 wage income and net income from rental apartments. In his petition to this Court, petitioner alleged (1) that he "is an active ordained member of the Clergy of the Universal Life Church, Inc.;" (2) that he "is under an irrevocable Vow of Poverty to the Universal Life Church, Inc.;" and (3) that the income upon which respondent determined he was taxable, in fact belonged to the Universal Life Church, Inc., and thus was not taxable to him. Respondent denied these allegations.

Petitioner resided in San Antonio, Tex., during the years 1979 and 1980, and at the time he filed his petition in this case.

This Court's Rules require the parties to attempt to attain the objectives of discovery through informal discussion, consul-

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years in question, and all references to Rules are to the Tax Court Rules of Practice and Procedure.

tation, or communication before resorting to the Court for formal discovery procedures. See *Odend'hal v. Commissioner,* 75 T.C. 400, 404 (1980); *International Air Conditioning Corp. v. Commissioner,* 67 T.C. 89, 92–93 (1976); *Branerton Corp. v. Commissioner,* 61 T.C. 691, 692 (1974); Rules 70(a)(1) and 90(a), Tax Court Rules of Practice and Procedure. After his informal discovery efforts proved futile, respondent, on January 24, 1983, served upon petitioner a Request for Admissions, Interrogatories, and a Request for Production of Documents. These discovery requests sought various documents and information pertaining to petitioner's purported tax returns for the years in question, any bank accounts under petitioner's signatory authority (including accounts under the name of Universal Life Church), petitioner's employment and W-2 wage income during these years, and petitioner's ownership and operation of an apartment building. Except for his admission that he resided in San Antonio, Tex., during 1979 and 1980, and at the time his petition herein was filed, petitioner denied and objected to all other paragraphs of respondent's Request for Admissions. In response to respondent's Interrogatories and Request for Production of Documents, petitioner stated that the information and documents were "not in, and/or under, the plaintiffs [sic] *individual* possession, custody or control." (Emphasis added.)

Pursuant to Rule 90(d) and (f), respondent moved the Court to review the sufficiency of petitioner's responses to his Request for Admissions. Respondent also moved, pursuant to Rule 104(b), for an order compelling petitioner to answer his interrogatories and to produce the documents sought or for an order imposing sanctions. Petitioner did not directly respond to respondent's motion to review the sufficiency of his answers to respondent's Request for Admissions. In his "response" to respondent's motion to compel responses to respondent's Interrogatories and Request for Production of Documents, petitioner (1) reiterated his claim that such documents and information were not in his "individual possession, control or custody"; (2) argued that respondent had proven neither the existence nor petitioner's "control, custody or possession" of such documents and information; and (3) claimed the Fifth Amendment privilege against self-incrimination. The basis of petitioner's Fifth Amendment claim appears to have been

newspaper reports of various criminal prosecutions elsewhere in Texas of "Vow of Poverty ministers" involved in other organizations (Basic Bible Church) similar to the Universal Life Church. Petitioner also stated that he was:

willing to ammend his response to defendant's interrogatories and request for documents if defendant will seek to have immunity granted to the plaintiff through administrative means which are clearly available to the defendant, and grant such immunity to plaintiff so that any information or documents requested if existing would not be used in criminal matters against the plaintiff in any criminal proceeding. [Reproduced literally.]

Respondent's motions were heard by the Court on July 6, 1983, and taken under advisement. Thereafter, on August 11, 1983, the Court decided another suit involving this same petitioner for two prior years, ruling against petitioner on his Fifth Amendment claim in that case. *Dusha v. Commissioner*, T.C. Memo. 1983–468, on appeal (5th Cir., Jan. 3, 1984). In order to permit petitioner the opportunity to adduce whatever proof and argument he was able to make in support of his Fifth Amendment claim in this case, the Court on August 24, 1983, denied both of respondent's motions.

Subsequently, on September 16, 1983, respondent renewed his motion to review the sufficiency of petitioner's response to respondent's Request for Admissions and his motion to compel petitioner to answer his Interrogatories and produce the documents sought in his Request for Production. To both renewed motions, respondent attached an affidavit from Robert C. Sawyer, the Chief of the Criminal Investigation Division for the Austin, Tex., District of the Internal Revenue Service, stating that he had caused a search of both the open and closed investigative files on criminal tax cases and that there was not, nor had there ever been, an open criminal case on petitioner. In his response to these renewed motions, petitioner reiterated his earlier positions and interposed various frivolous objections to the Sawyer affidavit.

On October 19, 1983, the Court granted both of respondent's motions. We entered an order deeming admitted certain paragraphs of respondent's Request for Admissions and directing petitioner to answer fully and completely respondent's Interrogatories and to produce to respondent's trial counsel the documents sought in respondent's Request for Production of Documents. Petitioner was ordered to comply with these

discovery orders by November 21, 1983. In the memorandum sur order attached to this order, we held petitioner's Fifth Amendment claim to be "entirely frivolous," stating:

There is nothing in this record remotely indicating that petitioner is faced with substantial hazards of self-incrimination or that he had reasonable cause to apprehend such danger. Nowhere does he validly explain his fear of criminal prosecution. Indeed, he can't for respondent states that there is no prior or pending criminal investigation of petitioner for the years at bar.

With respect to respondent's interrogatory and document requests, we stated:

A review of those requests reveals that they seek documents and answers relevant and material to the issues at dispute in this case. The documents are or should be in the possession, custody or control of petitioner and should be produced. * * * With respect to the interrogatories, all of the information sought should be within the personal knowledge of petitioner, and the Court will direct that the interrogatories be properly and fully answered.

Finally, we held petitioner's responses to respondent's interrogatory and document requests to be "frivolous and deficient," and petitioner's "objections" to respondent's motions to compel to be "wholly frivolous."

Included among the matters deemed admitted was the fact that the petitioner herein was the same person as the petitioner in docket No. 14421–81. In that case (*Dusha v. Commissioner, supra*), we dismissed petitioner's petition under Rule 104(c) as a sanction for his failure to comply with this Court's discovery order. In that case, as in the instant case, petitioner raised Fifth Amendment claims in resisting respondent's Interrogatories and Request for Admissions, and reiterated those same claims in "response" to the Court's discovery order. In that case, we held that petitioner's Fifth Amendment claim was "frivolous and for purposes of delay." *Dusha v. Commissioner, supra.*

On November 19, 1983, petitioner sent to respondent's trial attorney two documents, styled "Plaintiff's [sic] Reply to Respondent [sic] Attorney [sic] Interrogatory and Order of the Court" and "Plaintiff's [sic] Reply to Respondent's Attorney [sic] Request for Documents and Order of the Court." In these documents, petitioner (1) restated his position that "the documents requested either do not exist or are not in the plaintiff's [sic] *individual* possession, custody or control"; (2)

adhered to the same frivolous Fifth Amendment claim already rejected by the Court; and (3) reiterated his offer "to amend this reply in exchange for immunity from criminal prosecution being obtained for plaintiff [sic] by respondent." (Emphasis added.) Petitioner's so-called responses were completely unresponsive to this Court's order of October 19, 1983.

On December 12, 1983, respondent filed a motion for sanctions under Rule 104(c) for petitioner's failure to comply with this Court's discovery order of October 19, 1983. A hearing on respondent's motion was held on January 23, 1984, and respondent's counsel appeared and was heard on the motion. Although the hearing was held in San Antonio, Tex., petitioner's city of residence, petitioner did not appear when his case was called from the calendar. At the Court's direction, respondent's counsel attempted to contact petitioner to urge him to appear when respondent's motion was argued. In addition, in a telephone conversation with petitioner, the presiding judge urged petitioner to attend the hearing and offered to reschedule the hearing for his convenience. The presiding judge also warned petitioner that his case would be dismissed if he did not appear and indicate an intention to comply with the Court's order. Nonetheless, petitioner did not appear or seek to have the hearing rescheduled. The Court did, however, receive a document entitled "Plaintiff's [sic] Motion to Deny," filed with the Court in Washington, D.C. In that document, filed as petitioner's response, petitioner reasserted his arguments previously made and rejected, including his frivolous Fifth Amendment claim.

Petitioner has not complied with this Court's order of October 19, 1983.

## II

### Dismissal Under Rule 104(c)

Rule 104(c), Tax Court Rules of Practice and Procedure,[2] provides as follows:

---

[2]These Rules were reissued effective Jan. 16, 1984, with additions and amendments through Sept. 7, 1983. However, the only change in Rule 104(c) was the addition of the reference to Rule 75 covering discovery depositions of a nonparty witness. There has been no substantive change in Rule 104(c) that might affect this case.

(c) Sanctions: If a party or an officer, director, or managing agent of a party or a person designated in accordance with Rule 74(b), 75(c), or 81(c) fails to obey an order made by the Court with respect to the provisions of Rule 71, 72, 73, 74, 75, 81, 82, 83, 84, or 90, the Court may make such orders as to the failure as are just, and among others the following:

(1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the case in accordance with the claim of the party obtaining the order.

(2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.

(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the case or any part thereof, or rendering a judgment by default against the disobedient party.

(4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of the Court the failure to obey any such order.

Our Rule 104(c) is based upon rule 37(b)(2) of the Federal Rules of Civil Procedure (FRCP).[3] See Note to Rule 104(c), 60 T.C. 1124 (1973). Rule 104(c) and FRCP 37(b)(2) provide various sanctions for a party's failure to comply with a court's discovery orders. In interpreting and applying our discovery

---

[3]In pertinent part, rule 37(b), of the Federal Rules of Civil Procedure (FRCP), provides:

(b) Failure to Comply with Order.

\* \* \* \* \* \* \*

(2) *Sanctions by Court in Which Action is Pending.* If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b) (6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

(E) Where a party has failed to comply with an order under Rule 35(a) requiring him to produce another for examination, such orders as are listed in paragraphs (A), (B), and (C) of this subdivision, unless the party failing to comply shows that he is unable to produce such person for examination.

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

rules, we normally look for guidance to court decisions interpreting their counterparts in the Federal Rules of Civil Procedure. See *Rosenfeld v. Commissioner*, 82 T.C. 105, 116–117, 120 (1984); *Owens-Illinois, Inc. v. Commissioner,* 76 T.C. 493, 495–496 (1981); *Zaentz v. Commissioner*, 73 T.C. 469, 473–474 (1979).

Once it has been shown that a party has not complied with a court's discovery order, sanctions under FRCP 37(b)(2) are appropriate. *Societe Internationale v. Rogers*, 357 U.S. 197, 206–208 (1958). See 8 C. Wright & A. Miller, Federal Practice and Procedure, secs. 2281–2283 (1970); 4A Moore's Federal Practice, par. 37.03[2], at 37–57—37–58 (2d ed. 1983). Dismissal is one of the most severe sanctions available under FRCP 37(b)(2) or under our Rule 104(c).

In *Societe Internationale v. Rogers, supra*, the Supreme Court construed FRCP 37(b)(2). Because of the due process concerns, the Court held that dismissal was improper where the party's failure to comply was "due to inability, and not to willfulness, bad faith, or any fault of [the party]." *Societe Internationale v. Rogers*, 357 U.S. at 212. The Supreme Court discussed two cases involving the due process limitations upon a court's power to dismiss or default a party. In *Hovey v. Elliott*, 167 U.S. 409 (1897), the Supreme Court held that a defendant had been denied due process where the lower court had stricken his answer, thereby leading to a decree pro confesso without a hearing on the merits, for his refusal to obey a court order pertinent to his suit. In *Hammond Packing Co. v. Arkansas*, 212 U.S. 322 (1909), the Supreme Court ruled that due process had not been violated where the trial court had stricken a defendant's answer and entered a default judgement against him for his refusal to produce documents in accordance with a pretrial order. The Supreme Court stated that the trial court's actions simply reflected—

the undoubted right of the lawmaking power to create a presumption of fact as to the bad faith and untruth of an answer begotten from the suppression or failure to produce the proof ordered. * * * [T]he preservation of due process was secured by the presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense. [212 U.S. at 350–351.]

The Supreme Court distinguished *Hovey v. Elliott, supra*, on the ground that the defendant there had been denied his right

to defend "as a mere punishment." *Hammond Packing Co. v. Arkansas*, 212 U.S. at 350.

This rule, FRCP 37(b)(2), itself, was promulgated with *Hammond Packing Co. v. Arkansas, supra*, and *Hovey v. Elliott, supra*, in mind. See Notes of Advisory Committee, rule 37 (1937), quoted in 4A Moore's Federal Practice, *supra*, par. 37.01[3], at 37-7. The due process standard articulated in these cases was the basis for the Supreme Court's construction of FRCP 37(b)(2) in *Societe Internationale v. Rogers, supra*. The Supreme Court has recently reaffirmed both the due process standard of *Hammond Packing Co. v. Arkansas, supra*, and its construction of FRCP 37(b)(2) in *Societe Internationale v. Rogers, supra*, stating "Due process is violated only if the behavior of the [party] will not support the *Hammond Packing* presumption. A proper application of Rule 37(b)(2) will, as a matter of law, support such a presumption." *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinea* 456 U.S. 694, 706 (1982), citing *Societe Internationale v. Rogers, supra*.

The Supreme Court's *Societe Internationale* standard has generally "been interpreted to require some element of willfulness or conscious disregard of the order" before a case may be dismissed, or default judgment rendered, under FRCP 37(b)(2). 4A Moore's Federal Practice, *supra*, par. 37.03[2], at 37-78— 37-80. The Fifth Circuit (to which, barring stipulation to the contrary, any appeal would lie in this case) has had many occasions to apply the *Societe Internationale* standard. That court has described this standard in many ways—"flagrant bad faith," "callous disregard" of discovery responsibilities (see *Emerick v. Fenick Industries, Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976)); "evident lack of good faith," "willful nature of [party's] disobedience" (see *Romari Corp. v. United States*, 531 F.2d 296, 299 (5th Cir. 1976)); "deliberately obstructive conduct" (see *Jones v. Louisiana State Bar Association*, 602 F.2d 94, 97 (5th Cir. 1979)); "willful effort to both evade and frustrate discovery" (see *Morton v. Harris*, 628 F.2d 438, 440 (5th Cir. 1980), cert. denied sub nom. *Morton v. Schweiker*, 450 U.S. 1044 (1981)).

Other Circuit Courts have also generally striven to give effect to the *Societe Internationale* "willfulness, bad faith or [other] fault" standard. See *Damiani v. Rhode Island Hosp.*, 704 F.2d 12, 15—17 (1st Cir. 1983), and cases cited therein;

*Lorin Corp. v. Goto & Co.*, 700 F.2d 1202, 1207–1208 (8th Cir. 1983); *Aztec Steel Co. v. Florida Steel Corp.*, 691 F. 2d 480, 481–482 (11th Cir. 1982), cert. denied 460 U.S. 1040 (1983); *Baker v. Limber*, 647 F.2d 912, 918 (9th Cir. 1981).[4]

With one exception, neither this Court nor the Circuit Courts have attempted to articulate the standard to be applied by this Court in dismissing cases under Rule 104(c)(3) for violation of our discovery orders. In *Fox v. Commissioner*, 718 F.2d 251 (7th Cir. 1983), the Seventh Circuit affirmed our dismissal of the taxpayers' petition for their failure to comply with our discovery orders. In *Fox*, the court held that the considerations limiting a District Court's discretion in dismissing a case as a discovery sanction under FRCP 37 should equally limit our discretion in dismissing a taxpayer's petition under Rule 104. *Fox v. Commissioner*, 718 F.2d at 255. Applying the "standards" it discerned from the case law involving FRCP 37, the *Fox* court stated, 718 F.2d at 255, that:

the Tax Court may not dismiss a case as a discovery sanction pursuant to T.C.R. [Tax Court Rule] 104 unless the court finds that (1) the failure to comply with discovery was undertaken willfully *and* in bad faith, and (2) the party against whom sanctions are to be imposed *totally failed* to respond. [Emphasis added.]

The *Fox* court found that both tests had been met and affirmed our dismissal of the taxpayers' petition.

With all due respect to the Seventh Circuit, we believe that the *Fox* court failed to distinguish between our Rule 104(a) and Rule 104(c) and consequently applied the Federal case law under FRCP 37(d) rather than that under FRCP 37(b)(2). We think the latter is the applicable law. Under the facts of that particular case, the result would probably be the same under either the *Fox* standard or under the *Societe Internationale v. Rogers* standard. However, application of the proper standard is a matter of some importance to us as a trial court of national jurisdiction, if we are to administer our rules effectively.

As we read the case law, the courts have *not* required a total failure to comply with the discovery request as a prerequisite

---

[4]There is authority for the position that a grossly negligent failure to obey a discovery order may justify dismissal. *Cine Forty-Second St. Theatre v. Allied Artists*, 602 F.2d 1062 (2d Cir. 1979). See also *Dorsey v. Academy Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970). Because of the factual record in this case, we need not decide whether we would dismiss a taxpayer's case where his failure to comply with the court's discovery order is attributable to gross negligence.

to dismissal under FRCP 37(b)(2). The Supreme Court and the Circuit Courts of Appeals have consistently upheld FRCP 37(b) dismissals (against plaintiffs) and default judgments (against defendants) where the litigants' compliance with the discovery request was inadequate or incomplete. *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639 (1976); *Lorin Corp. v. Goto & Co.,* 700 F.2d at 1208; *Emerick v. Fenick Industries, Inc., supra*; *Romari Corp. v. United States, supra.*

In *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577 (1981), the Seventh Circuit affirmed the District Court's dismissal of Loctite's action under FRCP 37(b)(2)(C) for its failure to comply fully with the District Court's discovery orders. From the court's opinion, it is clear that Loctite had, to some extent, complied with the discovery order. Indeed, on appeal, Loctite argued it had fully complied, but the Seventh Circuit rejected its argument, stating, 667 F.2d at 581:

> Loctite's arguments stress literal compliance, but nowhere appear to recognize that it had a duty *not only to comply minimally with what was ordered,* but to assist in the resolution of the suit. Instead, Loctite balked at every attempt to clarify the issues; it now proffers technical arguments to induce this court to believe its conduct was acceptable. [Emphasis added.]

The Seventh Circuit's discussion of the standards for dismissal and appellate review of such a dismissal clearly indicates the court's understanding that any sanction, including dismissal, is available when the recalcitrant party has not fully complied with the court's discovery order. Application of the Seventh Circuit's *Fox* standard (total noncompliance) to the facts of *Loctite* would have required reversal, not affirmance.

In *Fox*, the Seventh Circuit cited *Laclede Gas Co. v. G. W. Warnecke Corp.*, 604 F.2d 561 (8th Cir. 1979), and *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989 (8th Cir. 1975), for the proposition that "The district court must * * * find a total failure to respond to the discovery requested." 718 F.2d at 254. However, we think the Seventh Circuit's reading of those cases is overly broad. In the context cited by the *Fox* court, both of those cases addressed the standards for dismissal under FRCP 37(d), not FRCP 37(b)(2). FRCP 37(d)[5] and our Rule 104(a)[6] (see

---

[5]FRCP 37(d) provides:

(d) Failure of Party to Attend at Own Deposition or Serve Answers to Interrogatories or Respond to Request for Inspection. If a party or an officer, director, or managing agent of a party or a person

Note to Rule 104(a), 60 T.C. 1124 (1973)), permit sanctions where a party has failed to respond to a discovery request. Although FRCP 37(d) refers to and incorporates the sanctions available under FRCP 37(b)(2), the circumstances for imposing sanctions under FRCP 37(d) are different from those for imposing sanctions under FRCP 37(b)(2). Once a party has responded, *however inadequately*, the appropriate action is a motion under FRCP 37(a)[7] or its counterpart in our Rules,

---

designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take his deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(c).

[6]Rule 104(a) provides:

(a) Failure to Attend Deposition or to Answer Interrogatories or Respond to Request for Inspection or Production: If a party or an officer, director or managing agent of a party or a person designated in accordance with Rule 74(b), 75(c), or 81(c) to testify on behalf of a party fails (1) to appear before the officer who is to take his disposition pursuant to Rule 74, 75, 81, 82, 83, or 84, or (2) to serve answers or objections to interrogatories submitted under Rule 71, after proper service thereof, or (3) to serve a written response to a request for production or inspection submitted under Rule 72 or 73 after proper service of the request, the Court on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraph (b) or (c) of this Rule. If any person, after being served with a subpoena or having waived such service, willfully fails to appear before the officer who is to take his deposition or refuses to be sworn, or if any person willfully fails to obey an order requiring him to answer designated interrogatories or questions, such failure may be considered contempt of court. The failure to act described in this paragraph (a) may not be excused on the ground that the deposition sought, or the interrogatory submitted, or the production or inspection sought, is objectionable, unless the party failing to act has theretofore raised the objection, or has applied for a protective order under Rule 103, with respect thereto at the proper time and in the proper manner, and the Court has either sustained or granted or not yet ruled on the objection or the application for the order.

[7]FRCP 37(a) provides in pertinent part:

(a) Motion for Order Compelling Discovery.

*    *    *    *    *    *    *

(2) *Motion.* If a deponent fails to answer a question propounded or submitted under Rules 30 or 31, or a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a), or a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request. When taking a deposition on oral examination, the proponent of the question may complete or adjourn the examination before he applies for an order.

If the Court denies the motion in whole or in part, it may make such protective order as it would have been empowered to make on a motion made pursuant to Rule 26(c).

Rule 104(b)[8] (see Note to Rule 104(b), 60 T.C. 1124 (1973)), to review the sufficiency of the party's responses to his opponent's discovery request. Only if a party has completely failed to respond to a discovery request is *any* sanction permissible under FRCP 37(d) or our Rule 104(a). See 8 C. Wright & A. Miller, Federal Practice and Procedure, *supra*, pars. 2282, 2285, 2291; 4A Moore's Federal Practice, *supra*, par. 37.05 at 37–98—37–100; *Stevens v. Greyhound Lines, Inc.*, 710 F.2d 1224, 1228 (7th Cir. 1983), and cases cited therein; *Charter House Insurance Brokers v. New Hampshire Insurance*, 667 F.2d 600, 603–604 (7th Cir. 1981); *Laclede Gas Co. v. G. W. Warnecke Corp.*, 604 F.2d at 565; *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d at 994–995.

Neither in this case, nor in *Fox v. Commissioner, supra,* was respondent's motion for the sanction of dismissal brought under Rule 104(a) for the taxpayer's failure to respond to a discovery request. In *Fox,* as in this case, respondent had already obtained an order under our Rule 104(b) (drawn from FRCP 37(a)(2)) directing the taxpayers to respond to respondent's discovery requests. In *Fox,* as here, the taxpayer failed to comply with a specific court order. Under the Seventh Circuit's *Fox* opinion, it could be argued that any minimal compliance by the taxpayer with our discovery orders would be sufficient to preclude the sanction of dismissal. The Federal District Courts have not permitted such an abuse of their discovery rules, nor shall we. The extent of a taxpayer's compliance with our discovery orders may well be a significant factor in determining whether the taxpayer's failure fully to comply was due to "willfulness, bad faith, or [other] fault." See *Societe Internationale v. Rogers, supra.* If the standard of *Societe Internationale* is met, however, token minimal compliance will not bar the sanction of dismissal.

---

[8]Rule 104(b) provides:

(b) Failure to Answer: If a person fails to answer a question or interrogatory propounded or submitted in accordance with Rule 71, 74, 75, 81, 82, 83, or 84, or fails to respond to a request to produce or inspect or fails to produce or permit the inspection in accordance with Rule 72 or 73, or fails to make a designation in accordance with Rule 74(b), 75(e), or 81(c), the aggrieved party may, within the time for completion of discovery under Rule 70(a)(2), move the Court for an order compelling an answer, response, or compliance with the request, as the case may be. When taking a deposition on oral examination, the examination may be completed on other matters or the examination adjourned, as the proponent of the question may prefer, before he applies for such order.

Although we may be quibbling over a simple matter of semantics, we also disagree with the second element of the "test" enunciated by the Seventh Circuit in *Fox v. Commissioner*, to the extent that it requires us to find a taxpayer's noncompliance to be *both* willful and in bad faith. The standard articulated in *Societe Internationale v. Rogers, supra*—"willfulness, bad faith, or any fault"—and applied in *National Hockey League v. Metropolitan Hockey Club, supra*, and *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinea, supra*, is clearly phrased in the alternative. See also *Hindmon v. National-Ben Franklin Life Insurance Corp.*, 677 F.2d 617, 620 (7th Cir. 1982); *Charter House Insurance Brokers v. New Hampshire Insurance*, 667 F.2d at 604–606; *Margoles v. Johns*, 587 F.2d 885, 888 (7th Cir. 1978). The purpose of this test is to differentiate between those situations where a party's noncompliance is due to circumstances beyond his control, in which case due process considerations forbid dismissal, and those situations where noncompliance is due to a party's culpable act or omission that justifies the presumption that his noncompliance was "an admission of the want of merit" of his position. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinea, supra*. To the extent that *Fox v. Commissioner, supra*, holds that willfulness and bad faith are separate and cumulative prerequisites to dismissal under our Rule 104(c), we disagree with the views of the Seventh Circuit.

Accordingly, we decline to apply the tests of *Fox v. Commissioner, supra*, in determining when we may and whether we should dismiss under Rule 104(c) a taxpayer's petition for his noncompliance with our discovery orders. We shall continue to look to those Federal court decisions involving FRCP 37(b)(2) for guidance in applying our Rule 104(c).

We now turn to apply the standards of *Societe Internationale* to the instant case. We recognize that dismissal is a sanction of last resort, not to be used indiscriminately. See *Marshall v. Segona*, 621 F.2d 763, 768 (5th Cir. 1980); *Jones v. Louisiana State Bar Association*, 602 F.2d at 96; *Bonaventure v. Butler*, 593 F.2d 625, 626 (5th Cir. 1979). We also recognize, however, that "here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the [trial] court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such

a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. at 643. Petitioner's conduct in this case calls for dismissal of his petition.

Petitioner's response to this Court's discovery order of October 19, 1983, was simply a repetition of his objections to respondent's initial discovery requests, objections that we held to be frivolous at the time we ordered petitioner to answer respondent's interrogatories and to produce the documents respondent sought. We recognize that dismissal is inappropriate where the litigant's failure to comply with the Court's order is based upon the proper exercise of a recognized privilege, such as the Fifth Amendment privilege against self-incrimination. See *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1086-1088 (5th Cir. 1979), rehearing denied 611 F.2d 1026 (5th Cir. 1980); *Thomas v. United States*, 531 F.2d 746 (5th Cir. 1976). See also *Campbell v. Gerrans*, 592 F.2d 1054 (9th Cir. 1979).[9] However, a valid exercise of the Fifth Amendment privilege requires more than a blanket refusal to answer where, as here, the material sought is not incriminatory on its face. *Moore v. Commissioner*, 722 F.2d 193 (5th Cir. 1984), affg. a Memorandum Opinion of this Court; *Steinbrecher v. Commissioner*, 712 F.2d 195, 197 (5th Cir. 1983). See also *Rechtzigel v. Commissioner*, 703 F.2d 1063 (8th. Cir. 1983), affg. per curiam 79 T.C. 132 (1982); *McCoy v. Commissioner*, 696 F.2d 1234, 1236 (9th Cir. 1983), affg. 76 T.C. 1027 (1981). As against the affidavit from the Chief of the Criminal Investigation Division, Austin, Tex., District of Internal Revenue Service, that petitioner is not and has never been the subject of a criminal investigation, petitioner has presented nothing to suggest any possible danger of incrimination.[10] Petitioner's persistent blanket assertion of the Fifth Amendment privilege after this Court has ruled it to be frivolous is persuasive evidence that his noncompliance with our discovery order was

---

[9]We also recognize that dismissal is inappropriate where the recalcitrant party has not been afforded the opportunity to attempt to exercise his Fifth Amendment privilege. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). Here, however, respondent's first motion to compel was denied specifically to allow petitioner to substantiate his Fifth Amendment claim.

[10]In light of this affidavit, the fact of criminal tax prosecution elsewhere in Texas against "Vow of Poverty ministers" "participating" in "churches" similar to petitioner's involvement in his Universal Life Church falls far short of indicating a "real and appreciable" danger of incrimination.

not in good faith, but was a deliberate, willful choice by petitioner to defy our order. See *Davis v. Fendler*, 650 F.2d 1154, 1159–1161 (9th Cir. 1981); *Rechtzigel v. Commissioner*, 79 T.C. at 140. Cf. *Sig M. Glukstad v. Lineas Aereas Nacional-Chile*, 656 F.2d 976, 978–979 (5th Cir. 1981).

Petitioner has persistently maintained that the documents and information respondent has sought were not in his "individual possession, custody or control." In ordering petitioner to produce the documents and answers, we stated that the documents "are or should be in the possession, custody, or control of petitioner," and that the information respondent sought through the interrogatories "should be within the personal knowledge of petitioner." Given the nature of the information sought by respondent—petitioner's tax returns, bank accounts under petitioner's signatory authority, petitioner's employment and compensation, and petitioner's apartment building[11]—petitioner's naked assertion that the documents and information were not in his "individual possession, custody or control" was completely inadequate. See *Rosenfeld v. Commissioner*, 82 T.C. at 115–118. In our October 19, 1983, order, we held petitioner's position to be "wholly frivolous." Moreover, in light of the matters deemed admitted (see note 11), and petitioner's "offer" to answer the interrogatories and produce the documents in exchange for "immunity" (itself an admission of "possession, custody or control"), petitioner's willful, bad-faith resistance to respondent's proper discovery requests and his defiance of our discovery order are apparent.[12]

---

[11]Among the matters deemed admitted by our order of Oct. 19, 1983, were—(1) petitioner's ownership and rental of an eight-unit apartment building in San Antonio, along with the authenticity of a 1976 deed conveying the building to petitioner and no record of a conveyance of the building by petitioner as of Dec. 30, 1982; (2) petitioner's employment as an electrician by the Pearl Brewing Co.; and (3) petitioner's receipt from Pearl of wage income of $24,046.20 in 1979 and $30,501.73 in 1980.

[12]The basis for petitioner's persistent claim that the documents and information are not in his individual possession, custody, or control is, at best, unclear. This statement seems to admit his possession, custody, or control of the information and documents in other than his individual capacity, presumably as minister, agent, or whatever of his Universal Life Church chapter. Even if petitioner was a mere custodian for another person or entity, his denial of individual possession, custody, or control was not an adequate response to respondent's requests and our order. Petitioner has not attempted to exercise some recognized privilege on behalf of a third person or entity (even assuming he has standing to assert the privilege of another), nor has he ever identified any such third person or entity. Finally, petitioner's offer to produce the documents and information in exchange for immunity negates the bona fides of any possible claim of privilege of a third person or entity that might be inferred. Petitioner cannot, in good faith, offer to waive the privilege of a third party in exchange for his personal immunity from criminal prosecution.

We conclude that dismissal is warranted in this case. Petitioner did not comply with this Court's discovery order of October 19, 1983, but instead persisted in making the same frivolous arguments we had already rejected in ordering him to comply with respondent's discovery requests. The information and documents that petitioner was ordered to produce went straight to the heart of the underlying legal issues in this case (assignment of wage and rental income to a chapter of Universal Life Church). Petitioner's failure to comply with this Court's order substantially prejudiced respondent's preparations for proper trial of this case. Petitioner's behavior in this case and in his prior case, *Dusha v. Commissioner, supra,* clearly demonstrates his contempt for his discovery obligations and his willful, bad-faith failure to comply with this Court's order. In light of petitioner's persistent contumacy, any lesser sanction than dismissal would encourage other litigants to ignore their discovery obligations and to flout this Court's discovery orders. Accordingly,

*An order of dismissal and decision for the respondent will be entered.*

Reviewed by the Court.

DAWSON, FAY, SIMPSON, STERRETT, GOFFE, WILES, WILBUR, CHABOT, NIMS, WHITAKER, KÖRNER, SHIELDS, HAMBLEN, COHEN, CLAPP, and SWIFT, *JJ.,* agree with this opinion.

JACOBS, *J.,* did not participate in the consideration of this case.