ROBERTO C. POLO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Polo v. Commissioner
Docket No. 27264-89
United States Tax Court
T.C. Memo 1993-448; 1993 Tax Ct. Memo LEXIS 463; 66 T.C.M. (CCH) 845; September 28, 1993, Filed *463 For petitioner: Edward P. Guttenmacher, Jerome S. Richman, John S. Bohatch, and Mitchell S. Fuerst. For respondent: Lewis R. Mandel and Andrew J. Mandell. COHEN
COHEN
MEMORANDUM OPINION COHEN, Judge: Respondent has filed a Motion to Impose Sanctions, seeking that this case be dismissed or that alternative sanctions be imposed by reason of petitioner's failure to comply with certain orders of the Court. The facts set forth in the chronology appear in various affidavits and exhibits in the record in this case and are not contested. Chronology
For some years prior to 1988, petitioner managed investments in art, antiques, and collectibles for international clients. About 1986, petitioner left the United States and moved to Monte Carlo, Monaco. He also opened an office in Geneva, Switzerland, and rented an apartment in Paris, France. In 1988, he moved to Italy. On June 25, 1988, he was arrested in Italy. At the time of his arrest, he was sought by Swiss authorities in relation to alleged embezzlement from his clients. Petitioner was released on bond in January 1989. On June 12, 1989, respondent sent a statutory notice of deficiency to petitioner for the year ended *464 December 31, 1988. The notice was based on petitioner's clients' embezzlement claims, which had by then been the subject of default judgments against petitioner in the U.S. District Court for the Southern District of New York. Respondent determined a deficiency of $ 25,827,298 and additions to tax under sections 6651(a), 6653(a)(1)(A), 6653(a)(1)(B), 6654(a), and 6661(a). The petition was filed November 13, 1989, and placed all of the determinations in dispute. In Polo v. Commissioner, T.C. Memo. 1991-16, we held that the petition was timely. By order dated September 17, 1991, the parties were directed to file with the Court a report as to their proposed schedule for preparation for trial of this case and trial. The parties' joint report was filed on November 8, 1991, and, pursuant to the agreement of the parties, the case was calendared for trial in New York City on December 1, 1992. It was further ordered, pursuant to the agreement of the parties, that all formal discovery should be commenced on or before June 15, 1992, and completed on or before August 14, 1992, and that all motions to compel discovery should be served and filed on or before *465 August 31, 1992. On April 3, 1992, respondent served interrogatories on petitioner. Respondent's interrogatories request that petitioner identify various corporations formed by him (including employees); the nature of those corporations' investments; the investment authorization received by petitioner or his companies; the actual investments and the records maintained with respect thereto; the particulars of the investors' instructions for the return of their investments; and whether any of their investments were returned. On April 8, 1992, respondent served a request for production of documents on petitioner. Because petitioner failed to answer the interrogatories or to produce the requested documents, on July 7, 1992, respondent filed a Motion to Compel Responses to Respondent's Interrogatories and a Motion to Compel Production of Documents. Petitioner filed an objection to respondent's motion reporting that he was incarcerated in a Florida prison pursuant to a Swiss extradition warrant and that, as a result of petitioner's incarceration, petitioner's counsel was having trouble gaining access to petitioner for the purpose of responding to respondent's discovery. Petitioner *466 alleged: 6. In the early 1980s, ROBERTO C. POLO formed a company to advise in the investment of art, antiques and collectibles. Through 1986, ROBERTO C. POLO and his company became world renown in their ability to find, authenticate and help clients acquire investments. Many of the clients of ROBERTO C. POLO were individuals who had invested in more traditional types of assets through the banking company where ROBERTO C. POLO had been employed. 7. Many of the clients of ROBERTO C. POLO were individuals whose investments, prior to the creation of his company, were managed by other advisors at the banking company where ROBERTO C. POLO had been employed. 8. ROBERTO C. POLO and his company were registered with the Securities and Exchange Commission as investment advisors in art, antiques and collectibles. ROBERTO C. POLO had no special knowledge of and no registration to advise in investments of stocks, bonds, money market type assets and the like. 9. Except for short term holdings of cash, ROBERTO C. POLO invested his clients' assets in art, antiques and collectibles. ROBERTO C. POLO was very successful at this. The items he purchased with the massed assets of his clients, *467 appreciated many times, even by hundreds of times in some cases. The written contracts he had with his clients provided for this type of investments, particularly, the joint ownership of a work of art costing hundreds of thousands or millions of dollars. 10. In 1986, the laws of the United States changed. Provisions were added to the Internal Revenue Code and the securities laws and regulations requiring that entities which made investments through the United States on behalf of foreign investors, disclose the beneficial owners of the assets. Many of ROBERTO C. POLO's clients did not want to have their beneficial ownership of assets disclosed. 11. Accordingly, many of his clients instructed ROBERTO C. POLO to move his operations to a foreign jurisdiction where disclosure would not be required. ROBERTO C. POLO formed an entity in the Cayman Islands and a second entity in Switzerland. His plan was to move the ownership interest in the assets from the United States to the Cayman entity and, then from the Cayman entity to the Swiss entity. He requested and obtained the consent of his clients to do this. 12. In 1987 and 1988, Mr. Polo commenced the process of creating the entities *468 and moving the assets. He obtained the necessary registrations in Switzerland, particularly, a charter that his company and he were advisors in investments in art, antiques and other collectibles. In Switzerland, ROBERTO C. POLO never requested and never obtained any authority to be an advisor in stocks, bonds or monetary type investments. 13. For reasons yet unknown to him, in late November 1987 two investors who controlled more than a dozen closely held entities investing through ROBERTO C. POLO abruptly terminated their investment agreements. [1] Pursuant to the contracts with ROBERTO C. POLO, they instructed ROBERTO C. POLO to liquidate their investments (or their participating interest in investments) and turn the proceeds over to their lawyers. 14. Notably, these investors, while controlling several closely held investment entities for themselves and their immediate family, were only a few of the hundreds of investors who had engaged the services of ROBERTO C. POLO. These other investors had shares in the assets with the investors who terminated their agreements with ROBERTO C. POLO. *469 On July 21, 1992, petitioner filed a Motion for Continuance based on a pending extradition hearing in the U.S. District Court for the Southern District of Florida. The motion stated, among other things: 10. At the time the parties before this Court submitted their proposed scheduling for the pre-trial order, the circumstances of an incarceration and the effect it has on trial preparation was not anticipated. 11. Moreover, if ROBERTO C. POLO is not allowed provisional release on bail, it is also possible he will be incarcerated in Miami while this Court is trying his case in Manhattan. It would be unfair to try this case without the presence of the Petitioner, particularly in a case as factually intensive as this. 12. The circumstances are such that maintaining a scheduled trial calendar for this case in December is unrealistic if ROBERTO C. POLO is to attend the trial of his Tax Court case and assist his lawyer in preparing and at trial.
In the statement filed as a Supplemental Objection to Respondent's Motions to Compel, petitioner's counsel represented: 3. I was engaged by Roberto C. Polo in the middle of 1989. I was initially engaged to represent him in *470 connection with internal revenue tax matters arising from the same facts and circumstances pending in the extradition proceeding before the United States District Court for the Southern District of Florida. * * * * 6. Since his return to the United States in September 1990, Roberto C. Polo has been working with me in attempting to gather evidence to present in the United States Tax Court. 7. His lack of resources combined with a pernicious pilfering of his records and the records of his companies has made it necessary to seek third party documents and testimony to gather the information needed to prosecute his case in the Tax Court. 8. Roberto C. Polo has spent dozens of hours with me prior to his detention calling persons to obtain the documents and information he needs to prevail. 9. He has also travelled with me to New York to meet with the attorneys for the Internal Revenue Service to discuss his case and to gather documents from them. * * * * 18. In order to try his case in the Tax Court, I need to have Roberto C. Polo with me throughout the trial. It is practically impossible for me to try his case and confront and challenge his accusers, without having him in court *471 to advise me and respond, extemporaneously to the testimony taken.
A conference call among counsel for the parties and the Court was held on September 9, 1992, and included a discussion of the consequences to trial preparation of the hurricane that had struck the area of petitioner's counsel's office and petitioner's place of incarceration (Hurricane Andrew). Petitioner's Motion for Continuance was granted, and the parties were ordered to report to the Court with respect to a new schedule for trial preparation, anticipating a trial during the spring or summer of 1993. On November 20, 1992, the parties filed a Joint Report in which they proposed a new trial date of December 1, 1993. On February 1, 1993, a Joint Report was filed in which respondent renewed the motions to compel filed July 7, 1992. On February 3, 1993, the Court ordered petitioner to answer the interrogatories and produce the documents called for by respondent's discovery on or before April 30, 1993. The order included the following paragraph: ORDERED: That in the event petitioner does not fully comply with the provisions of this Order, this Court will be inclined to impose sanctions pursuant to Tax Court *472 Rule 104, which may include dismissal of this case and entry of a decision against petitioner. * * *
On April 30, 1993, petitioner, personally, filed a Motion for Enlargement of Time to respond to respondent's discovery. Petitioner did not show any good faith effort to comply with the outstanding orders by submitting even partial responses and contended that his counsel had failed to assist him in responding to discovery. Petitioner's failure even partially to comply was inconsistent with counsel's representations, quoted above, about time spent in obtaining "documents and information he needs to prevail." See supra p. 6. Thereupon, his counsel filed a Motion to Withdraw. According to his counsel's supplement to the motion to withdraw, on March 23, 1993, petitioner sent a letter (exhibit H to that supplement) to his counsel stating: I have not dedicated any time to the interrogatories because the extradition case has left me no time at all and in addition, I am seriously considering declaring bankruptcy. * * * I really don't see any point in going forward with the IRS case. It is quite certain that I will be extradited.
Counsel also represented (exhibit I *473 to that supplement) that he had advised petitioner on March 29, 1993, as follows: I received your letter of the 24th and was not surprised by what you said. However, I want to make it very clear that the most reasonable expectation of the situation is that Judge Cohen will dismiss the case you filed in the Tax Court for failing to properly prosecute and for failing to obey her order. The consequences of this you may want to discuss with me. If you plan on a bankruptcy you must file it before Judge Cohen does this.
Petitioner's Motion for Enlargement of Time and counsel's Motion to Withdraw were set for hearing in Washington, D. C., on June 2, 1993. As a result of arguments made and agreements reached at the hearing on June 2, 1993, a conference call among the parties, including petitioner personally and his counsel, and the Court was held on June 4, 1993. The Court explained to petitioner the action it proposed to take, which was set forth in a written order dated June 9, 1993. Petitioner's Motion for Enlargement of Time was denied, and petitioner was ordered, on or before July 2, 1993, to deliver to respondent records identified in respondent's request for production *474 of documents served on petitioner on April 8, 1992. It was further ordered that petitioner was to appear for a deposition by respondent on or before August 9, 1993. Counsel withdrew the motion to withdraw. The order dated June 9, 1993, stated, in part: ORDERED: That, on or before August 23, 1993, the parties shall, jointly or separately, report to the Court in writing as to (1) petitioner's production of documents, (2) petitioner's deposition, and (3) the proposal of the parties for a date and place of trial to be held no later than June 1994. * * * * * * * Petitioner is advised that any failure to comply with this Order, combined with his prior failure to comply with Orders as to production of documents and answers to interrogatories, may result in dismissal of this case and entry of a decision against him.
During June and July 1993, certain documents were provided to respondent, and the parties agreed that petitioner's deposition would be held on August 9, 1993. On August 3, 1993, petitioner's counsel advised respondent for the first time that petitioner intended to assert his privilege against self-incrimination to all questions asked at his deposition and that the *475 deposition would be canceled. Thereafter, petitioner refused to appear for a deposition, and he has failed to date to assert properly his Fifth Amendment privilege in response to particular questions. Petitioner contends that he first decided to assert the privilege after July 2, 1993, when it appeared that he would indeed be extradited. On August 18, 1993, respondent's Motion to Impose Sanctions was filed. Respondent argues that petitioner's Fifth Amendment privilege was waived in this proceeding. In petitioner's objection to the motion, it is reported that petitioner was extradited from the United States on August 31, 1993. Discussion
Petitioner did not timely assert and has never properly asserted his privilege in this case. He has refused to appear at an agreed deposition and asserted an improper blanket claim of privilege. Petitioner presented his version of the facts when it served his purpose; i.e., in opposition to a prior motion for sanctions and in support of his motion for continuance. Yet, he refuses to provide details in response to the interrogatories propounded by respondent. He has thus waived his privilege in this proceeding. Rogers v. United States, 340 U.S. 367, 373-375 (1951). *476 He has made it impossible for respondent, or even his own counsel, to prepare for trial. Regardless of the potential validity of his claims of privilege, petitioner is in default of several orders of the Court. The chronology, including petitioner's own statements, compels the conclusion that he never has and never does intend properly to prosecute this case and that his various tactics have been merely dilatory. He claims that he was justified in first asserting his privilege when his extradition was ordered, but the long pendency of those proceedings and his own statements refute that claim. It has been agreed by the parties throughout this case that the issues in this case and the issues involved in petitioner's extradition hearing both involve whether petitioner embezzled millions of dollars from investment clients. It is not disputed that the same records are helpful in preparation for the extradition hearing and for this case. Yet, petitioner has not shown a bona fide attempt to respond to the interrogatories or to answer questions at deposition that would cast any doubt on the determinations in respondent's statutory notice. Petitioner was warned by his counsel and *477 by the Court of the probable consequences of his continuing failure to comply. The Court several times extended petitioner's time to comply due to circumstances beyond his control, but the arrangement for his deposition was made for the purpose of allowing petitioner to overcome his prior defaults. This arrangement was then repudiated by petitioner. Petitioner's assertion of his Fifth Amendment privilege, even if valid, does not relieve him of the burden of proof in this case. See United States v. Rylander,, 460 U.S. 752, 756 (1983). We are not here sanctioning petitioner for exercising his Fifth Amendment privilege. See Dusha v. Commissioner, 82 T.C. 592, 606 (1984). Instead, we are dismissing petitioner's case by reason of his failure to comply with prior orders to answer interrogatories and his failure to appear for his deposition. Petitioner has left us with no way to determine the merits of his claims. Inasmuch as his counsel represented that trial could not proceed without petitioner and there is no expectation that petitioner will be available for trial within a reasonable period, there is no practical alternative *478 to dismissal of this case. On this record, dismissal is warranted. An Order of Dismissal and Decision will be entered. Footnotes
1. ROBERTO C. POLO and his lawyer have spent hundreds of hours attempting to learn of the reason.↩