Carole Jean **BRASHEAR**, Plaintiff,

v.

**UNITED STATES of America,
Defendant.**

**No. CIV.A. 3:99CV01799G.**

United States District Court,
N.D. Texas,
Dallas Division.

March 1, 2001.

---

---

N Dean Hawkins, Attorney at Law, N Dean Hawkins & Associates, Dallas, TX, for Carole Jean Brashear, plaintiffs.

Jon E Fisher, Attorney at Law, U.S. Department of Justice, Tax Division, Dallas, TX, for United States of America, defendants.

### MEMORANDUM ORDER

FISH, District Judge.

Carole Jean Brashear ("Brashear") seeks a refund of income taxes paid, as well as interest and penalties assessed thereon, for the taxable year ending December 31, 1985. To establish her claim for a refund, Brashear seeks to carry back to her 1985 taxable year a net operating loss ("NOL") of $22,553 incurred in 1987. Joint Pretrial Order at 1–2. She also seeks a deduction of $23,900 as a dry hole loss from an oil well purchased in 1985. *Id.* The United States of America ("United States" or "the government") does not contest the amount of the net operating loss carryback or the dry hole loss claimed by Brashear. Trial Transcript at 9, 14. Rather, the government asserts that this suit for a refund was not filed within the time period allowed by law. Joint Pretrial Order at 8. In addition, the government contends that Brashear cannot carry back to 1985 the net operating loss claimed because the entire amount of the loss would have been absorbed in 1984, had 1984 been an open tax year. *Id.* at 8–9. The United States argues that Brashear is not entitled to a dry hole loss deduction for 1985 as she has already claimed the loss in 1986. *Id.* at 9; Trial Transcript at 10. In addition, the government asserts that the dry hole loss deduction claimed by Brashear is against public policy.

The case was tried without a jury on September 7, 2000. The court now sets forth its findings of fact and conclusions of law under Rule 52(a), F.R. CIV. P.

### I. BACKGROUND

Although many of the facts in this case are not in dispute, a brief chronology of events is necessary to understand the analysis. In 1985, Brashear purchased from S.K. Rogers Oil, Inc. ("Rogers") a five percent working interest in an oil well in which she already owned a mineral interest. Trial Transcript at 20. Later in 1985, Brashear purchased the remaining interest in that well. *Id.* at 21. The well was completed in June, 1985. *Id.* at 20. That well never produced oil and has remained inactive since it was drilled. *Id.* at 20–21. Although Brashear purchased the well in 1985, Rogers continued until 1994 to perform various duties required by the Texas Railroad Commission in connection with the well. *Id.* at 21–22. In 1994, Rogers filed suit to compel Brashear to assume these duties, which went along with her ownership of the well. *Id.* at 22. Brashear finally agreed to assume these obligations, but the Railroad Commission initially rejected this transfer of responsibility because Brashear did not have an organization report on file and had not met the Commission's bonding requirements. *Id.* at 31–32.

On April 15, 1986, Brashear paid $30,000 toward her tax liability for 1985. Stipulation 4, Joint Pretrial Order at 10; Transcript for Carole Jean Brashear, Plaintiff's Exhibit 13 ("Tax Transcript"), at 1. She did not, however, file a tax return with her

payment and did not make another payment until September 26, 1995. See *id.* at 2. The Internal Revenue Service ("IRS" or "the Service") issued a Notice of Deficiency to Brashear on April 24, 1992 indicating that her total tax liability for 1985 was $68,177. Notice of Deficiency ("NOD"), Plaintiff's Exhibit 1. On June 15, 1994, Brashear filed her first income tax return for 1985. Form 1040 U.S. Individual Income Tax Return 1985 for Carole Jean Brashear ("1985 Return"), Plaintiff's Exhibit 2. The IRS accepted Brashear's 1985 return and reduced her tax liability by $12,775. *See* Tax Transcript at 2. *See also* United States of America's Proposed Findings of Fact and Conclusions of Law ("Government's Proposed Findings and Conclusions") ¶ 6 (The United States "Admits that the IRS made an abatement in the amount [of $12,775.00] on November 29, 1994."). Following this abatement, Brashear's total 1985 tax liability before interest and penalties was $55,402. See *id.* In addition to the taxes imposed for 1985, the IRS has assessed $59,991.18 in interest, $40,452.96 in penalties, and $270 in fees and collection costs against Brashear. *See* Tax Transcript. Beginning in September, 1995, Brashear made regular payments to retire the balance of the assessment which remained after her $30,000 payment. Tax Transcript at 2. She made the last payment on the assessment on May 27, 1997. Tax Transcript at 3. Brashear's Second Amended Return, in which she claims a refund for taxable year 1985, was received by the IRS on April 24, 1998. Form 1040X Amended U.S. Individual Income Tax Return, Plaintiff's Exhibit 9.

## II. *ANALYSIS*

### A. *Net Operating Loss*

■ The doctrine of sovereign immunity bars suit against the United States unless the United States has expressly consented to be sued. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). The United States has consented to be sued for taxes improperly assessed or collected, *see* 28 U.S.C. § 1346(a)(1), but only if the plaintiff complies with the jurisdictional requirements set forth in 26 U.S.C. § 7422. Section 7422(a) provides in relevant part:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

The general statute of limitations on claims for federal income tax refunds is set forth in Title 26, Section 6511(a) of the United States Code, which provides:

[A] [c]laim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

Under the Internal Revenue Code, a taxpayer is not entitled to a tax refund "unless a claim for credit or refund is filed by the taxpayer within such period." 26 U.S.C. § 6511(b)(1).

Section 6511(d)(2) also contains a special rule pertaining to refund claims based on carryback of a net operating loss. That section provides:

If the claim for credit or refund relates to an overpayment attributable to a net operating loss carryback or a capital loss carryback, in lieu of the 3–year period of limitation prescribed in subsection (a), the period shall be that period which ends 3 years after the time prescribed by law for filing the return (including extensions thereof) for the taxable year of the net operating loss or net capital loss which results in such carryback.

Brashear and the United States disagree about how these statutory provisions apply to this case. The government contends that Section 6511(d)(2) controls, to the exclusion of Section 6511(a), and that Brashear's claim for a refund is time-barred because it was filed more than three years after October 15, 1986, the due date—as extended—for her 1985 return. United States of America's Post–Trial Brief ("Government's Brief") at 4, 10. Brashear, on the other hand, asserts that Section 6511(d)(2), in its application to net operating loss refund claims, merely modifies the three year rule of 6511(a), and that the two year payment rule of 6511(a) remains intact. *See* Post Trial Brief of Plaintiff Carole Jean Brashear ("Brashear's Brief") at 22.

The government has cited several cases to support its contention that the only statute of limitations applicable to NOL claims is Section 6511(d)(2)(A) and that the two year payment rule of Section 6511(a) is inapplicable. *See* Government's Proposed Findings and Conclusions at 9, citing *Sachs v. United States*, 941 F.2d 464, 466 (6th Cir.1991), and *Longiotti v. United States*, 819 F.2d 65, 67 (4th Cir.), *cert. denied*, 484 U.S. 985, 108 S.Ct. 502, 98 L.Ed.2d 500 (1987).[1] The government quotes extensively from *Chernin v. United States*, 149 F.3d 805 (8th Cir.1998), in its post-trial brief. Government's Brief at 10–12. Of these three cases, however, *Chernin* alone supports the government's position. The government has seriously misconstrued *Longiotti* and *Sachs*. Most importantly, moreover, the government has completely ignored relevant case law from this circuit.

In *Nelson v. United States*, 757 F.2d 1537 (5th Cir.1985), the Fifth Circuit, while limiting the amount of the refund to that portion of the tax paid during the two years preceding the filing of the claim, recognized that a refund claim for an NOL brought within two years of payment was in fact timely. *Nelson*, 757 F.2d at 1538–39. Ignoring this decision, the United States relies instead upon *Chernin, Longiotti,* and *Sachs* as support for its position. The government contends that *Longiotti* and *Sachs* stand for the proposition that section 6511(a) "does not apply when the issue is the timeliness of a refund claim based on an [sic] net operating loss." Government's Proposed Findings and Conclusions at 9. *Longiotti* and *Sachs* do not so hold. In those cases, the taxpayers seeking a refund had obtained a final determination from the United States Tax Court regarding their tax liability for the year to which the loss was to be carried. *Longiotti*, 819 F.2d at 66; *Sachs*, 941 F.2d at 465. In each, the court observed that a claim for refund would be barred absent the savings clause of section 6511(d)(2)(B).[2]

---

**1.** Brashear asserts that *Longiotti* and *Sachs* are inapposite because they dealt with a prior version of Section 6511(d)(2)(A). Brashear's Brief at 22. The 1978 amendments to Section 6511(d)(2)(A) changed the limitations period of that section but are irrelevant to the analysis of the interplay between 6511(d)(2)(A) and 6511(a). Interestingly, *Nelson v. United States*, 757 F.2d 1537 (5th Cir. 1985), relied on by Brashear to support her position, also dealt with the pre–1978 version of section 6511(d)(2)(A).

**2.** This section provides, "[i]f the allowance of a credit or refund of an overpayment of tax

*Longiotti* and *Sachs* note that section 6511(d)(2)(B)(i) refers solely and specifically to the period provided in section 6511(d)(2)(A). Thus, the language of section 6511(d)(2)(B)(i) mandates that *when there has been a prior determination of liability for the taxable year in which a loss is to be carried,* a taxpayer may bring a refund suit within the three year period provided for in section 6511(d)(2)(A). This holding is inapplicable when (as here) the taxpayer's liability for the year to which the loss is to be carried has not been finally and fully determined by the tax court.

■ The government's misplaced reliance upon *Longiotti* is particularly disturbing given that the Fourth Circuit in its opinion expressly referred to *Nelson.* Citing *Nelson,* 757 F.2d 1537, and Revenue Ruling 65–281, the court in *Longiotti* stated that absent a prior determination of the taxpayer's liability, "the limitations period for refunds based on NOL carrybacks is ... ordinarily either [three years from the time prescribed for filing a return] or *two years from when the tax is paid.*" *Longiotti,* 819 F.2d at 66 (emphasis added). Thus, "if a final determination of the taxpayer's liability for the earlier year has not been made, a claim filed after expiration of the period prescribed in section 6511(d)(2)(A) of the Code, but ... within two years from the date the tax was paid, is to be considered timely and valid." Rev. Rul. 65–281, 1965–2 C.B. 444. A recent decision in this district makes the same point. See *Dresser Industries, Inc. v. United States,* 73 F.Supp.2d 682 (N.D.Tex. 1999). Discussing the *Nelson* decision, the court in *Dresser* stated, "[t]he *Nelson* court recognized that the three-year limi-

tations period set forth in section 6511(d)(2)(A) does not abrogate the two-year payment rule of section 6511(a). However, the refund claim in *Nelson* did not involve a year previously decided by the Tax Court." *Dresser,* 73 F.Supp.2d at 690 n. 7.

In *Chernin,* by contrast, the Eighth Circuit read *Longiotti* and *Sachs* to mean that the only statute of limitations for NOL refund claims is found in section 6511(d)(2)(A), even when there has been no prior determination of the taxpayer's liability by the tax court. *Chernin,* 149 F.3d at 814 n. 7. The government's reliance upon *Chernin* in this case is misplaced, since this court is bound to follow the law of this circuit as announced in *Nelson* and construed in *Dresser* and *Longiotti.* This court also finds persuasive Revenue Ruling 65–281, as well as the holding of *Sachs.*

■ Under the holdings in *Nelson, Dresser,* and *Longiotti,* Brashear's claim for a refund for a NOL carryback to 1985 was timely if it was filed within two years from the date that Brashear's 1985 tax was paid. Brashear's Second Amended Complaint, in which she claims a refund for 1985, was received by the IRS on April 24, 1998. Form 1040X Amended U.S. Individual Income Tax Return, Plaintiff's Exhibit 9. Thus, in order for her Second Amended Complaint to have been timely filed, Brashear could not have paid her 1985 tax prior to April 25, 1996. The government takes the position that Revenue Ruling 73–305 mandates that the IRS apply undesignated payments to tax, penalties, and interest, in that order. Government's Brief at 5. Following an abatement on November 28, 1994 of some of the tax owed, Brashear's total tax liability, exclusive of

---

attributable to a net operating loss carryback or a capital loss carryback is otherwise prevented by the operation of any law or rule of law ..., such credit or refund may be allowed

or made, if claim therefor is filed within the period provided in [section 6511(d)(2)(A)]." 26 U.S.C. § 6511(d)(2)(B)(i).

penalties and interest, was $55,402.00. *See* Tax Transcript at 1–2. On March 18, 1996, Brashear made a payment to the IRS of $24,578.31, bringing her total payments at that date to $79,002.06. Tax Transcript at 2. Because Brashear's payments as of March 18, 1996 exceeded the total tax she owed, the government contends that Brashear's tax was fully paid as of March 18, 1996 and that her claim for a refund is time barred under 26 U.S.C. § 6511(a). Government's Brief at 3–5.

■ Brashear seeks to avoid the application of Revenue Ruling 73–305 in two ways. First, she asks this court to strike the testimony of government witness Cindy Ocmand ("Ocmand") as it concerns Revenue Ruling 73–305. Brashear's Brief at 16–21. Brashear contends that this testimony should be stricken as a sanction for the government's failure to respond to her interrogatories, in which she sought to discover how the government had applied payments to her tax assessment. *Id.* Second, Brashear contends that Revenue Ruling 73–305 does not apply on the facts of this case. *Id.* at 21. With respect to Brashear's request that Ocmand's testimony be stricken, it should be noted that Brashear never moved to compel the government to answer her interrogatories under Federal Rule of Civil Procedure 37(a)(2)(B).[3] In addition, Brashear did not file a motion *in limine* prior to trial. Fi-

nally, and even more tellingly, Brashear did not object at trial to the government's questioning of Ocmand regarding how the IRS applied Brashear's payments. Given Brashear's failure (1) to avail herself of the appropriate pre-trial remedy for failure to respond to discovery requests and (2) to object to the witness' testimony when offered, Brashear's request that Ocmand's testimony be stricken is denied.

Brashear does not contend that Revenue Ruling 73–305 is entitled to no deference by this court.[4] Instead, she argues that Revenue Ruling 73–305 is irrelevant because its primary focus is whether and when a taxpayer may take a deduction for interest assessed on unpaid taxes. Brashear's Brief at 21. According to Brashear, even if Revenue Ruling 73–305 has some application beyond this limited context, it does not apply on the facts of this case because the IRS' own records show that the service did not allocate Brashear's payments among the three categories. *Id.*

Brashear maintains that because the IRS computers do not break down the total assessment from the tax transcript into the individual components of tax, penalty, and interest, the two year period should run from the date of the last payment on the total assessment. Brashear's Brief at 16. Brashear argues that "the earliest date on which Defendant United States of America is able to establish that

**3.** See *GFI Computer Industries, Inc. v. Fry,* 476 F.2d 1, 3 (5th Cir.1973):

Plaintiff's remedy for incomplete or otherwise objectionable answers to interrogatories ... was to file a motion under Rule 37(a) for an order requiring defendant to answer .... If such an order were issued and defendant failed to comply, the court could then invoke sanctions under Rule 37(b). On April 10, the date on which trial was set, plaintiff had no viable Rule 37(a) motion before the court.

Cf. *Britt v. Corporacion Peruana De Vapores,* 506 F.2d 927, 932 (5th Cir.1975) (failure to

comply with pretrial request for production of photographs not a basis for imposition of sanctions where there was no order of the court compelling production that was ignored).

**4.** "In this circuit, revenue rulings are generally given weight as expressing the studied view of the agency whose duty it is to carry out the statute." *Estate of McLendon v. Commissioner of Internal Revenue,* 135 F.3d 1017, 1024 n. 10 (5th Cir.1998) (internal quotations omitted).

[Brashear] had paid the taxes in question is full is January 27, 1997, the date on which the assessments ... had been paid in full." Plaintiff's Proposed Findings of Fact and Conclusions of Law ("Brashear's Findings and Conclusions") at 5–6. *See also* Brashear's Brief at 14–15 ("[I]t must be concluded that Defendant cannot establish that the tax was paid in full prior to January 27, 1997."). Brashear also directs the court's attention to two instances in which a "penalty for late payment of tax" was assessed after March 18, 1996—the date on which the IRS contends Brashear's tax was fully paid. *See* Tax Transcript at 3. *See also* Trial Transcript at 92–94.

 Brashear, of course, bears the burden of proving that she is entitled to the NOL deduction claimed. *INDOPCO, Inc. v. Commissioner of Internal Revenue*, 503 U.S. 79, 84, 112 S.Ct. 1039, 117 L.Ed.2d 226 (1992); *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933).[5] To demonstrate that her refund claim was timely, Brashear must prove by a preponderance of the evidence that she had not—as the government claims—fully paid her 1985 tax prior to April 25, 1996. Brashear has failed to carry her burden of proof on this point. The IRS has offered credible evidence that it applies taxpayer payments to tax, penalties, and interest, in that order. *See* Trial Transcript at 86 ("Payments are always applied to tax first and then [to] penalties and interest"). *See also* Rev. Rul. 73–305, 1973–2 C.B. 43. Brashear contends that the fact that neither the IRS computer-generated tax tran-

script nor the record of accounts prepared manually by IRS employee Merrily Stanglin ("Stanglin") allocated Brashear's payments among tax, penalties, and interest constitutes proof positive that her payments were applied to the assessment as a whole and not first to her tax liability. Brashear's Brief at 21. The court is not persuaded that the format of these two accounting reports proves anything about how the IRS allocated Brashear's payments. The computer-generated tax transcript relied upon by Brashear is nothing more than a chronological listing of debits and credits to Brashear's 1985 IRS account, Tax Transcript, while the record of accounts manually prepared by Stanglin is nothing more than the same chronological listing of debits and credits to Brashear's 1985 IRS account, *plus* a column showing a running account balance. *See* Record of Accounts, Plaintiff's Exhibit 14.

It appears that these reports are simply two—out of an entire universe of reports— that could be generated with Brashear's 1985 IRS account figures. In fact, Stanglin testified that it was possible to generate a report manually that would allocate Brashear's payments to tax, penalties, and interest. Trial Transcript at 78. She did not allocate the payments in her record of account only because she was not asked to do so. *Id.* at 78, 81. Furthermore, Stanglin testified that, using the tax transcript, she was able to calculate the date upon which Brashear's 1985 tax was fully paid as March 18, 1996. *Id.* at 87.[6] The court is of the opinion that the format of two

5. Because this case involves a tax dispute which commenced prior to the enactment of 26 U.S.C. § 7491, the burden shifting provisions of that statute do not apply.

6. On March 18, 1996, Brashear made a payment of $24,578.31 to her IRS account for her 1985 tax liability. Tax Transcript at 2. With that payment Brashear's total payments

amounted to $79,002.06. See *id.* As of March 18, 1996 the total tax assessed against Brashear for 1985 (exclusive of penalties and interest) was $55,402.00. See *id.* Thus, March 18, 1996 was the first date upon which Brashear's payments exceeded the tax she owed. See *id.*

summary accounting reports produced by the IRS in this case is not, standing alone, sufficient evidence to support the conclusion that the IRS did not allocate Brashear's payments first to tax, and then to penalties and interest. Brashear argues that the assessment against her 1985 account on two occasions in early 1987 of a "penalty for late payment of tax" is additional evidence supporting the inference that the IRS itself did not regard Brashear as having fully paid her 1985 tax by March 18, 1996. On cross-examination, however, Ocmand testified that "[p]enalties continue to accrue until the account is paid off." Trial Transcript at 93. Believing this explanation by Ocmand's to be credible, the court concludes that the evidence adduced by Brashear is insufficient to carry her burden of proof.

■ While not expressly couching her arguments in terms of estoppel, Brashear advances contentions containing overtones of that doctrine. Consequently, out of an abundance of caution, the court will briefly address Brashear's implication that the IRS should be estopped to maintain the position the government urged at trial. "In order to establish estoppel against the government in this circuit, a party must prove affirmative misconduct by the government as well as the four traditional elements of estoppel." *Matter of Taylor,* 132 F.3d 256, 263 (5th Cir.1998) (citing *United States v. Bloom,* 112 F.3d 200, 205 (5th Cir.1997)). "The traditional elements of estoppel are '(1) that the party to be estopped was aware of the facts, and (2) intended his act or omission to be acted upon; (3) that the party asserting estoppel did not have knowledge of the facts, and (4) reasonably relied on the conduct of the other to his substantial injury.'" *Id.* The

court cannot conclude that either (1) the failure to allocate Brashear's payments in the tax transcript and record of accounts or (2) the assessment of a penalty for late payment of tax after March 18, 1996 constituted affirmative misconduct on the part of the government. However, even if it be assumed *arguendo* that Brashear could establish affirmative misconduct and that she could also prove the first three elements of estoppel, she nevertheless adduced no evidence at trial that she relied upon this alleged misconduct of the government in deciding when to file for a refund. Because there is no evidence in the record tending to show detrimental reliance, Brashear has not established estoppel against the IRS.

### B. *Dry Hole Loss*

■ In 1985, Brashear invested $23,900 in an oil well that never produced.[7] Brashear's Findings and Conclusions at 5. She seeks a refund for the amount of this oil well loss or, in the alternative, a deduction for intangible drilling costs. *Id.* at 9. The government argues that Brashear is not entitled to a refund or a deduction, because such a refund or deduction would violate public policy. Government's Brief at 16. This is so, argues the government, because the Texas Railroad Commission had not recognized Brashear's ownership of this well at the time of the alleged loss. *Id.* Even if a refund or deduction were not against public policy, the government contends, Brashear cannot claim the deduction for 1985 because she claimed the same deduction previously on her 1986 income tax return. *Id.* Brashear counters that she erroneously took the deduction in her 1986 tax return because the supporting documentation had been destroyed in a fire. Trial Transcript at 43.

---

**7.** Although the government stresses in its post-trial brief that Brashear has no documentation to support her investment, the gov-

ernment stipulated to the amount of the loss at trial. Government's Brief at 16. *See also* Trial Transcript at 14.

It is unnecessary to decide whether the refund or deduction claimed by Brashear as a result of her unsuccessful oil well investment is against public policy. Suffice it to say that a taxpayer cannot take the same deduction more than once. Brashear has failed to carry her burden of proving that the deduction erroneously claimed in her 1986 tax return was disallowed by the IRS. The only evidence provided by Brashear on this point was her own testimony. While Brashear testified that the dry hole loss deduction she claimed in 1986 was disallowed by the IRS, she submitted no documentation to support that testimony. Trial Transcript at 43, 47, 60, 68. Because Brashear's testimony regarding disallowance of the dry hole deduction is entirely unsubstantiated, the court is not persuaded that the IRS disallowed this deduction on Brashear's 1986 tax return.[8]

### III. *CONCLUSION*

Brashear's refund claim for a net operating loss carryback to her 1985 taxable year is barred by the statute of limitations. Brashear's claim for a refund or for a deduction for $23,900 invested in the oil well purchased in 1985 is not supported by the evidence. Accordingly, judgment will be entered that Brashear take nothing on her claim against the government for a refund of income taxes, penalties, and interest assessed for the taxable year ending December 31, 1985.

**SO ORDERED.**

---

**8.** Cf. *Leitgen v. Commissioner of Internal Revenue,* 1981 WL 10937 (U.S. Tax Court Sept. 21, 1981):

> At trial petitioners' only evidence in support of their claim was the vague and generalized testimony of petitioner L.W. Leitgen.... Despite petitioners' knowledge that

it was necessary for them to substantiate their alleged 1972 loss at trial, they failed to present any substantiation to support their claim. Petitioners have failed to establish that they incurred a net operating loss in 1972.